THE STATE OF OHIO, APPELLEE, v. STRUB, APPELLANT.

(No. 1032—Decided November 13, 1975.)

*Mr. Joseph J. Baronzzi*, prosecuting attorney, for appellee.

*Mr. Harry R. Conn* and *Mr. James D. Primm, Jr.*, for appellant.

O'NEILL, J. The defendant, the appellant herein, and a person named Donald Tucker, both being residents in or near East Liverpool, Ohio, had decided that for some reason they should move to the state of Florida. They did not have sufficient funds to finance their trip and had both determined that if they were to make the trip they would have to get some money. On the night in question, they were both in a house located in East Liverpool, Ohio, along with three other persons. There is sufficient evidence that while in the house it was determined that Donald Tucker possessed a .38 caliber revolver. At sometime shortly before 11 p. m., an independent witness testified that while these two persons were in another room, along

with other people, he heard them discussing their plans for the remainder of the evening. The essence of this discussion was that the independent witness heard Donald Tucker say that he was "gonna go pick up a fagot." He said that he was "gonna roll him." This witness did not know whether the defendant was the subject of this conversation, and naturally could not say whether the defendant heard the conversation, basically because there were two other persons in the room where Tucker was making his statements. The witness admitted that he did not know for sure if Tucker was talking to the defendant. The same witness testified that he did not hear the defendant enter into the conversation.

The uncontradicted testimony from that point on is that the defendant and Tucker left this rooming house and went to a bar in East Liverpool, Ohio. The defendant entered into a conversation with an acquaintance of his, while Tucker sat at the bar and talked to a large-sized man whom the defendant did not know. Eventually Tucker notified the defendant that they were going to leave the bar and go out to drink some beer. The three of them entered Tucker's car, Tucker driving the car. The stranger sat in the right-hand front seat and the defendant sat in the right-hand back seat. After driving, they stopped at an establishment known as the Chat and Chew. The passenger gave Tucker some money. Tucker entered the Chat and Chew and returned with some beer and some cigarettes. It was developed in a statement given by the defendant to the authorities in Columbiana County, Ohio, that while Tucker was in the Chat and Chew, the passenger made some kind of homosexual approaches to him, and he ordered him to stop and moved in the left-hand rear seat. After purchasing the beer, the three of them proceeded to an area near East Liverpool, Ohio, known as the "flats" area. When they arrived at the "flats" area, they all alighted from the car and proceeded to open their cans of beer and to drink beer. Once again the stranger made some type of approach to the defendant and the defendant punched the passenger in the mouth and

supposedly then said to the passenger that he did not like that kind of stuff and ordered him to get away and get lost. At that point, Tucker became upset and upbraided the passenger about some incident which had taken place a few months before and then said to the passenger: "Give me all of your money!" The passenger said something to Tucker, to the effect: "Are you crazy?" or "What's wrong with you? I'm getting out of here!" The passenger started to leave the scene. At this point, Tucker drew his revolver, fired a shot in the air, and then fired at the passenger. The passenger fell to the ground. The defendant ran to him, could not determine where he had been hit, but said he was breathing in a funny way, and blood was coming out of his mouth. At this point, Tucker went through the clothing of the passenger removing some money. He and the defendant then left the scene. They returned to the house, and the next day they, along with two females, left the area. They were subsequently apprehended in the state of Florida and returned to this jurisdiction. They have both been charged with aggravated murder. The defendant was found guilty, not as a principal, but apparently upon the direction of the court, as an aider and abettor to an aggravated murder.

R. C. 2945.25 states, in part, as follows:

"A person called as a juror on an indictment may be challenged for the following causes: * * *

"(C) In the trial of a capital offense, that his opinions preclude him from finding the accused guilty of an offense punishable with death."

Upon the last effective date of this statute (October 1, 1953), the punishment for a capital offense was determined by the jury.

Former R. C. 2901.01, stated, in part:

"* * * Whoever violates this section is guilty of murder in the first degree and shall be punished by death unless the jury trying the accused recommends mercy * * *."

This determination by the jury was an absolute act of discretion, not to be influenced by the court, guided by the evidence disclosed upon the trial (*Howell* v. *Ohio*, 102 Ohio

St. 411). This act of discretion was held to be unconstitutional by the United States Supreme Court in the case of *Furman* v. *Georgia* (1972), 408 U. S. 238, at page 256:

"Thus these discretionary statutes are unconstitutional in their operation."

Subsequently the Ohio legislature adopted R. C. 2903.-01, which states, in part:

"(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.

"(C) Whoever violates this section is guilty of aggravated murder, and shall be punished as provided in section 2929.02 of the Revised Code."

R. C. 2929.02 provides that one who is convicted of aggravated murder shall suffer death or be imprisoned for life. The penalty to be imposed is to be determined by the trial judge if the cause was tried by a jury. In an aggravated murder case, the trial judge exercises this judgment only if and after the jury has found the defendant guilty of the principal and guilty of one or more specifications set forth in R. C. 2929.04. The jury finding as to specifications must be upon proof beyond a reasonable doubt. Thus, it becomes obvious that no longer does the jury in capital offenses determine the punishment to be meted out. The jury's determination of guilt as to specifications is not a discretionary determination, it is a determination based upon proof. Since the penalty of death is no longer a matter to be determined by the jury, it does not then follow that the jurors should be questioned relative to their scruples about capital punishment.

"* * * [T]he General Assembly intended that a challenge for cause be permitted where a prospective juror's knowledge or opinions would preclude from him giving fair consideration to all the evidence in his *determination of the facts* or applying the pertinent law to the facts so determined." *State* v. *Elliott*, 25 Ohio St. 2d 249, 252.

The defendant has cited and argued the law propounded by the United States Supreme Court in the case of *Witherspoon* v. *Illinois*, 391 U. S. 510. We do not find *Witherspoon* to be applicable for the reason that in that case it was the office of the jury to determine the penalty.

The defendant raises, also, a part of R. C. 2945.25, reading in part as follows:

"A person called as a juror on an indictment may be challenged for the following causes: * * *.

"(C) In the trial of a capital offense, that his opinions preclude him from finding the accused guilty of an offense punishable with death. * * *."

Defendant agrees that this language regarding opinions in capital cases does not appear as a challenge for cause in Criminal Rule 24. A comparison of the statute and the rule reflects that the rule contains all of the provisions set forth in the statute except the specific provision dealing with the death penalty. This exclusion must lead to the conclusion that the statute is no longer applicable. We feel this reasoning is further borne out by Criminal Rule 1(A), which provides:

"Applicability. These rules prescribe the procedure to be followed in all courts of this state in the exercise of criminal jurisdiction, with the exceptions stated in subdivision (C) of this rule."

The matter under consideration is not set forth as an exception.

A matter of further import in disposing of this assignment of error is the fact that the penalty of death was not imposed. The whole argument is based upon the opinions of the jurors having to do with the death penalty. In any appeal, the final test is whether the defendant has been prejudiced by the error complained of. If it were error for the trial court to bar an examination of the jurors in respect to the death penalty, prejudice to the defendant would arise, only, if the death penalty was the final judgment.

"In order to support reversal of a judgment, the record must show affirmatively not only that error inter-

vened but that such error was to the prejudice of the party seeking such reversal." *Smith* v. *Flesher,* 12 Ohio St. 2d 107, first paragraph of the syllabus.

The first assignment of error is rejected for the foregoing reasons.

The second assignment of error complains that the trial court erred in charging the jury that defendant could be found guilty as an aider and abettor even though charged as a principal. We reject this assignment of error. Upon the completion of instructions, the trial judge asked:

"Now are there any additions or corrections which counsel desire to request at this time?"

Defendant's counsel responded:

"Defense has no additions or corrections your Honor."

If there was an error in the charge, it is now too late to complain.

" * * *No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection." Criminal Rule 30.

We hold further that in view of R. C. 2923.03(F), a party charged as a principal may be found guilty of complicity. This section states:

"* * * A charge of complicity may be stated in terms of this section, or in terms of the principal offense."

The defendant argues further that the failure to charge him as an aider and abettor was unfair and prevented him from preparing an adequate defense. The record of the case deflates this argument. At a pre-trial conference on September 4, 1974, twelve days before trial, in the presence of counsel for the defendant, the prosecutor questioned the trial judge as to whether "the court is still going to charge them on the matter of aider and abettor." The trial judge acknowledged that he would and no question was raised by defense counsel. This fact certainly is not supportive of a suggestion of surprise.

The third assignment of error contends that defend-

ant's conviction was against the manifest weight and sufficiency of the evidence. We do not agree. As we have set forth in our factual presentation, we find evidence that defendant and Don Tucker agreed to go to Florida and agreed they needed money. Don Tucker stated in defendant's presence that he was going to pick up a fagot and roll him. When defendant left with Tucker on this expedition, Tucker carried with him a .38 caliber revolver. The defendant was present when Tucker shot decedent and robbed him. Defendant returned from the scene of the incident and related what had happened and stated that he thought the victim was still alive, and produced $50 with the explanation that they got it "from some guy." The defendant made no attempt to notify anyone about the shooting nor about the wounded man. The abandonment of an injured human being is not indicative of innocence.

"The state may prove acts or statements of the accused which he probably would not have done or made if innocent, and which, therefore, have a tendency to give rise to an inference that he has a guilty connection therewith." 15A Ohio Jurisprudence 2d 258, Criminal Practice and Procedure, Section 228.

"By giving the history of the conduct and sayings of the party accused, at a time when they may have been influenced by the transaction, a source of information is frequently opened to the jury respecting the guilt or innocence of the defendant." *Moore* v. *Ohio*, 2 Ohio St. 500, syllabus.

This failure to tender aid to the victim is compounded by the fact that defendant witnessed a crime, obviously serious, and failed to report the incident to some law enforcement agency. In our opinion, this failure is an inference of complicity and relevant to the issue of guilt. In fact, this failure to report a gunshot wound in and of itself is a criminal violation.

"Whoever is involved in any manner in a circumstance in which a person sustains a gunshot wound, or any wound which has been inflicted by a deadly weapon of any kind, shall, as soon as possible, notify the sheriff

of the county or, if within a municipality, the police department of such municipality, or the state highway patrol within areas of its jurisdiction *. * *." R. C. 2917.44.

Further relevant evidence is the fact that defendant and Tucker left on their trip to Florida obviously financed at least in part by the money stolen from decedent. This sharing in the fruits of a crime, with full knowledge of the crime, circumstantially bespeaks complicity. Defendant, on the day after the homicide, along with Mr. Tucker and two girls, proceeded on the planned trip to Florida. This trip, however, changed in complexion. When the travellers were in South Carolina, Mary Miller made a phone call to her parents. She stated she was informed by them: "we was in trouble." The trip was not terminated at that point, but was continued and under such circumstances it is reasonable to infer that it now became a flight from investigation.

"'It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.' 2 Wigmore on Evidence (Third Ed.), 111, Section 276 * * *." State v. Callihan, 11 Ohio App. 2d 23, page 28.

When the information was received in South Carolina that there was trouble, the defendant disposed of the murder weapon by throwing it into a creek or river.

"Attempts to suppress evidence indicate a consciousness of guilt, and, if proven to have been made by defendant, are highly probative of criminality." 15A Ohio Jurisprudence 2d 260, Evidence, Section 231.

"In Mefford v. State, 13 Ohio App., 106, it was held: 'Attempts to suppress evidence indicate a consciousness of guilt, and if proved to have been made by defendant are highly probative of criminality.'" Richards v. Ohio, 43 Ohio App. 212, page 221.

"It is a general rule that the intentional spoliation or destruction of evidence relevant to a case raises a presumption, or, more properly, an inference, that this evi-

dence would have been unfavorable to the cause of the spoliator." 29 American Jurisprudence 220, Evidence, Section 177.

Defendant argues, in essence, that he was a mere passive observer to a crime committed by another person. We feel that there was overwhelmining evidence of acts before and after the commission of the homicide whereby the jury could refuse to accept such an excuse and could return the verdict which they did. Most of the evidence was circumstantial, but a conspiracy may be proved by circumstantial evidence. (*General Tire & Rubber Company* v. *Firestone Tire & Rubber Company* [N. D. Ohio], 349 F. Supp. 333.) Once the jury found a conspiracy, they rightfully held defendant responsible for the act of aggravated murder.

The defendants' fourth assignment of error complains that the trial court erred in overruling his motion to declare R. C. 2903.01, 2929.02, 2929.03 and 2929.04 unconstitutional. The basis for this argument is that such statutes permit the arbitrary imposition of the punishment of death. We overrule this assignment of error. The defendant was not sentenced to death, and, therefore, not prejudiced by the cited statutes. Our reasoning finds support in the case of *State* v. *Broadnax*, 31 Ohio St. 2d 197. In that case, the appellant had been sentenced to death. He appeared before the Supreme Court complaining about the exclusion of persons from the jury who had a general opposition to the death penalty. The Supreme Court, upon motion, modified the death penalty to life imprisonment. The court held that since death was no longer the sentence, complaints relative to jurors' opinions about the death penalty were moot. We apply the same rule in denying this fourth assignment of error.

*Judgment affirmed.*

Lynch, P. J., and Donofrio, J., concur.