OPINION
Defendant-appellant, Jose M. Franco, appeals his conviction for possession of marijuana. We affirm.
On April 9, 1997, following a routine traffic stop, police found more than forty thousand grams of marijuana in the back of a pick-up truck in which appellant was a passenger. Appellant was arrested and subsequently indicted on one count of possessing more than twenty thousand grams of marijuana, a violation of R.C.2925.11(C)(3)(f).[1] Appellant pled not guilty to the charge and waived his right to a jury trial. In June 1997, the case was tried to the bench.
At the trial, the state presented the testimony of three state troopers who took part in appellant's apprehension and arrest. State Trooper Matthew S. Warren, a member of the drug interdiction unit of the Ohio State Highway Patrol, testified that at 10:52 a.m. on April 9, 1997, he clocked a pick-up truck traveling seventy-three miles per hour in a sixty-five mile per hour zone on Interstate Route 70. Warren followed the truck in his cruiser and noticed that it had an expired Arizona license plate on the bumper and what appeared to be a temporary tag in the back window. He eventually pulled the truck over.
After stopping the truck, Warren approached the driver's side of the vehicle and informed the driver, Leonard Griffith, that he had been speeding. Warren asked Griffith for his driver's license and registration. Griffith responded that he had borrowed the truck from his girlfriend and could not produce the registration. During this exchange, Griffith was so nervous that his hands shook and he dropped his license twice. Warren put Griffith in the back of his cruiser while he ran a check on his license and asked Griffith a few questions. Griffith told Warren that his passenger's name was Jose, that he had known him two months, and that he did not know Jose's last name. Warren noticed that Griffith was trembling and nervous and that he was sweating profusely even though it was not a warm day. The dispatcher eventually advised Warren that Griffith's driver's license was under suspension in Arizona and that he "had a court action required through Arizona." Warren left Griffith in the cruiser and spoke with appellant.
Appellant told Warren that he had no identification and that he and Griffith were traveling to Columbus to visit Griffith's exwife and daughter. This contrasted with a previous statement by Griffith — made in appellant's presence — that he was driving to Columbus to find work farming. Warren relayed his conversation with appellant to Griffith. Griffith revised his story and told Warren that they were indeed going to visit his ex-wife and his daughter, but that he did not know their address or telephone number. Warren called for backup.
Trooper Sean Davis arrived on the scene shortly thereafter with his K-9 unit ("dog"). Davis took the dog on a "walk-around" of the pick-up truck and the dog quickly alerted. Warren testified that "[t]he dog went up and immediately hit on the bed and started to go around the right side of the vehicle. Then the dog did something that is a very rare occasion [sic] * * *. The dog actually tried to crawl underneath the truck, scratching the underside of the bed, which is very, very unusual." A subsequent search revealed a false bed had been created in the back of the truck concealing forty-nine packages of marijuana weighing more than forty thousand grams.
Trooper Davis testified at trial that when he arrived at the scene of the traffic stop he spoke with appellant. Appellant presented Davis with half of an expired California driver's license that appeared to be his own. Appellant told Davis that he didn't know what his social security number was. Appellant also stated that he was born on January 12, 1954, but did not know whether he was forty-two or forty-three. Davis testified that appellant seemed "very jovial" until Davis asked him where they were going. Then appellant "started looking down at his feet * * * and started fidgeting around, drawing [Davis'] attention [to] why the questions [he] was asking made him so nervous all of a sudden." After the dog identified the truck as possibly containing narcotics, Trooper Davis moved appellant to the back of Trooper Warren's cruiser. Davis observed at this time that appellant's "legs were just shaking out of control, just back and forth, back and forth. * * * He couldn't put his feet flat to control it. They were shaking that bad." Davis identified appellant's level of nervousness as "extraordinary."
Trooper Richard Whitehead, also with the Ohio State Highway Patrol, later took a statement from appellant at the West Jefferson post of the highway patrol. In the statement, which was admitted into evidence, appellant answered Whitehead's questions as follows:
 Q: [Whitehead] Were you driving a Dodge truck with Arizona tags today?
A: [Appellant] No. I never drive.
Q: Who was driving?
A: The other guy.
Q: Do you know his name?
A: No.
 Q: How long were you a passenger in the truck?
A: From Phoenix, Arizona to here, Columbus.
* * *
Q: How long have you known the driver?
A: Almost a month and two weeks.
Q: Do you know why you are under arrest?
A: No.
 Q: Why do you think you are under arrest?
A: I have no idea.
* * *
Q: Do you own the truck you were in?
A: No.
Q: Who owns it?
A: I think the other guy. The driver.
 Q: Do you often drive across the county [sic] with someone whose name you don't even know?
A: No. This is the first time.
Q: Why did you do it this time?
 A: He invited me. He said he was coming here. I've never been here so I said O.K.
* * *
 Q: Do you think that sounds strange and unbelievable?
A: Yes.
 Q: Can you tell me what your true intentions are then?
A: No.
 Q: Are you being paid to travel with this man you don't even know?
A: No.
 Q: I'm trying to find a reason you would make such a long trip with a man whose name you don't even know. Your [sic] not being paid, why would you do it?
 A: I talked to the guy. He told me he was coming here. I said O.K.
* * *
Q: What's in your truck?
 A: I got my clothes, sunglasses. That [sic] it. There's nothing in the bed. (Emphasis added.)
* * *
 Q: So you took a bus to Phoenix to meet a man whose name you don't know to go on a thousand mile trip for no real reason?
A: Yes.
Q: Does that sound credible to you?
A: No.
At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29(A). The trial court judge denied the motion finding that there was "at least circumstantial evidence to establish the defendant was conscious of the presence of the drugs simply by his behavior." In doing so, the trial court also stated that "[t]he behavior tends to lend itself more to probable cause than to proof of guilt."
Finally, appellant testified on his own behalf. Appellant stated that he was Mexican and that he was in the United States illegally. Appellant first entered the United States in 1980, but returned to Mexico after he broke his hip in 1985. In 1992, appellant again entered the United States and went to live with a nephew in Ontario, California. In March 1997, appellant went from California to Phoenix, Arizona "looking for a job." Appellant testified that he met "a man named Chirris," in the grocery store in Phoenix.[2] About one month later, Griffith told appellant he was driving to Ohio to see his girlfriend and his little girl and appellant decided to ride along to see if he could find work in Ohio. Appellant testified that he traveled with $107 and a few articles of clothing. He did not know where he would stay in Ohio, or what kind of work he would find. Appellant also stated that he did not drive the truck, that he was not aware that there was marijuana under the false bed of the truck, and that he did nothing to help transport the marijuana from Phoenix to Ohio. Appellant also stated that he was nervous when the police stopped the pick-up truck because of his illegal status.
At the close of the evidence, appellant was convicted as charged. Appellant timely filed this appeal.
On appeal, appellant presents two assignments of error in which he challenges first the sufficiency and then the weight of the evidence. In his first assignment of error, appellant complains that the trial court erred in denying his Crim.R. 29(A) motion. In his second assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. At the heart of both arguments is appellant's claim that the state failed to show beyond a reasonable doubt that appellant "possessed" the marijuana.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. This court's standard of review of a claim of insufficient evidence was set forth in State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, * * * followed).
In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 389. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In this case, appellant was apparently convicted for his complicity in the offense committed by Griffith. R.C. 2923.03 (complicity) prohibits aiding and abetting another in the commission of an offense. See R.C. 2923.03(A)(2). "To establish that an accused acted as an aider and abettor to a crime, the state must prove the the accused incited, assisted, or encouraged the criminal act." 29 Ohio Jurisprudence 3d (1994) 170, Criminal Law, Section 2940, citing, inter alia, State v. Sims (1983), 10 Ohio App.3d 56. See, also, State v. Mootispaw (1996), 110 Ohio App.3d 566,570. Aiding and abetting is a substantive and independent offense, so that aiders and abettors to the principal offense may be prosecuted without the trial and conviction of the principal offender. State v. Graven (1977), 52 Ohio St.2d 112, 115-116; State v. Perryman (1976), 49 Ohio St.2d 14, 27; State v. Smith (1983), 14 Ohio App.3d 366, 368. An accused who is indicted as a principal may be convicted on proof that he was an aider and abettor. State v. Strub (1975), 48 Ohio App.2d 57. See, also, R.C. 2923.03(F) (one who aids and abets "shall be prosecuted and punished as if he were a principal offender").
The principal offense charged against appellant was possession of more than twenty thousand grams of marijuana. R.C. 2925.01(K) defines "possession" as follows: "[P]ossession means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. State v. Haynes (1971), 25 Ohio St.2d 264, 269-270. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus, certiorari denied (1982), 459 U.S. 870, 103 S.Ct. 155, citing State v. Wolery (1976), 46 Ohio St.2d 316; State v. Watts (Nov. 23, 1992), Warren App. No. CA92-04-039, unreported. Possession is a voluntary act if "the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended his possession." R.C. 2901.21(C)(1). "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). See, also, State v. Stivers (Mar. 19, 1990), Butler App. No. CA89-05-079, unreported.
Mere presence at the scene of a crime is not sufficient to support a conviction for aiding and abetting. Mootispaw at 570. However, from the evidence adduced at trial, we find that a fact finder could infer that appellant was not merely a passenger in Griffith's truck, but instead assisted Griffith in transporting the marijuana across the country. This is most clearly demonstrated by appellant's inability to relate a believable story to police and by his effort to mislead police by stating, "There's nothing in the bed [of the truck]." It is evident that the trial court did not believe appellant's version of the events preceding his arrest, and noteworthy that even appellant did not find his own story to be credible. Based upon the foregoing, we find that appellant aided Griffith, the principal offender, in his commission of a crime.
In accordance with the standards of review articulated above, we find that appellant's conviction was supported by sufficient evidence and it was not against the manifest weight of the evidence. The assignments of error are overruled.
Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance." If the drug involved is more than twenty thousand grams of marijuana, the offense is a felony of the second degree. See R.C. 2925.11(C)(3)(f).
[2] Apparently, Chirris was what appellant called Griffith. Appellant testified that he did not know the last name of "Chirris."