OPINION
Defendant-appellant, Mark A. Davis, appeals his conviction in the Clermont County Court of Common Pleas for felonious assault.
Appellant was indicted in March 2000 on one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of attempted murder in violation of R.C. 2903.02(A) and 2923.02(A). The latter charge was dismissed before trial at the state's request. The charges stemmed from an incident that occurred in the early morning hours of January 1, 2000 wherein appellant and five of his friends allegedly assaulted Gary Gumbert ("Gary") and his friend, Matthew McCullough ("Matt"), outside of the Eastside Inn, a local tavern in Union Township, Clermont County, Ohio. Appellant's friends are Joey Smith ("Joey"), Joanne Smith ("Joanne"), Chad Lynch ("Chad"), Anitra Finley ("Anitra"), and Steve Lehman ("Steve"). Gary suffered a fractured kneecap which required two surgeries and painful physical therapy. At the time of the trial, Gary was walking with a limp, did not have full range of motion in the injured knee, and could not function without daily pain medication.
Appellant and his five friends were jointly tried to a jury on October 25-November 1, 2000. The trial revealed the following facts: In the evening of December 31, 1999, appellant and his friends met at Joanne's apartment. Later that evening, they decided to go to a friend's house. Because everybody but Steve and Anitra was intoxicated, Steve decided to drive appellant's car. Shortly before midnight, appellant and his friends were pulled over for a missing headlight. Steve was unable to produce a driver's license. A police officer dispatched to assist in the stop testified that the group was boisterous and obnoxious, and that he could detect a strong odor of alcohol from the individuals, especially from Joanne and Chad. Appellant was eventually allowed to secure his car on the side of the road in lieu of impoundment as long as it was not driven for the remainder of the evening. Appellant and his friends walked to the Eastside Inn where appellant tried to call his sister for a ride home.
That same evening, Gary, his wife Michelle, and their friends, Tracy ("Tracy") and Matt McCullough, Annette Williams ("Annette"), and Kent McCord ("Kent"), had dinner at a local restaurant where they consumed some alcohol. At about 9:30 p.m., they went to the Eastside Inn to celebrate New Year's Eve where they also consumed some alcohol. Although they did not consider themselves to be intoxicated, they decided to call a taxi shortly after midnight. Upon arriving at the bar, Charles Beckner ("Beckner"), the taxi driver, went in the bar to tell Gary and his group that he was there. When he returned to his taxi, Beckner found Joanne sitting in the taxi. When he told her that the taxi was for another group, Joanne became belligerent and used profanities before walking up to her friends. Joey, Joanne's brother, briefly joined the argument, using profanities. Gary, Michelle, and the McCulloughs presented different accounts than appellant and his friends as to what happened next.
Michelle testified that when the taxi arrived, she and Annette left the bar to hold the taxi while the beverage tab was being paid. Outside, they were confronted by Joanne who asked them "Are you having a good New Year? Well, that's about to change. Give me your fucking money." While appellant, Anitra, and Chad were pulling Joanne back and restraining her, Michelle and Annette locked themselves in the taxi. Michelle eventually went back to the bar to get the rest of their group. Appellant and his friends followed Gary and his group outside. As Gary and his friends were getting into the taxi, Joanne, who was by then physically restrained by her friends, kept screaming "Let me go, I want to kill those fucking bitches." Gary, Michelle, and Matt observed Joanne punching one of her friends to get loose.
Unfortunately, the taxi could not physically accommodate the driver, Kent, and Gary in the front seat. With eminently bad timing, the driver asked that a male front seat passenger trade places with a female backseat passenger. Gary and Matt got out of the taxi. Joanne got loose and ran to the taxi where she confronted Gary, while her friends walked up to the taxi. Although Gary told her he did not want any trouble, Joanne struck him in the mouth with a closed fist. At that point in time, Joanne's group was standing directly behind and next to Joanne, one to two feet away from Gary. Appellant, Joey, and Chad started telling Gary "fuck you, we'll kick your ass, shut the hell up." Gary grabbed Joanne by her wrists as she was about to strike him again.
Joey then punched Gary in the face while Chad kicked Gary's left knee. Unable to hold his weight on his left leg, Gary fell to the ground where Joey and Chad kept kicking him. Gary eventually pulled himself up only to be thrown on the taxi hood where he was repeatedly punched by Joey and Chad. Appellant, Anitra, and Joanne joined in the assault. Gary testified that when he was on the hood and later on the ground again, appellant, Joanne, Joey, Chad, and Anitra all continuously punched and kicked him. While being beaten up, Gary could hear over and over "guys' voices screaming, `you're dead, you're fucking dead, we're going to kill you.'" Gary crawled trying to escape but kept being struck by appellant, Joey, and Chad. Gary testified he did not see Steve hit him.
Michelle testified that with the exception of Steve, everybody in appellant's group, including appellant, was punching Gary and kicking him in the face. Witnessing her husband being repeatedly kicked in the face, leg, and ribs, Michelle tried to intervene but was punched in the back of the head by a friend of appellant. During the assault, Michelle was screaming for someone to call 911. Tracy testified that everybody in appellant's group, with the exception of Steve, was involved in the beating of Gary, and that "[n]obody was just standing, watching." When Gary was on the ground, Matt could hear "the five other people on [Gary, that is, everybody but Steve], shouting `die, fucker, die.'"
The reason Steve was not involved in the assault on Gary was because he was busy assaulting Matt. Matt originally got out of the taxi to allow passengers to trade places. Matt testified that as soon as Gary fell on the ground the first time, Steve "jumped on" Matt, punching him and striking him in the head about six times. Tracy tried to pull Steve off of her husband but was grabbed by the hair and thrown to the ground. The beating of Gary and Matt abruptly stopped and appellant and his group left the scene when someone mentioned that the police were coming. Appellant and his group went to a nearby gas station where they eventually got rides home.
Appellant and his friends presented a very different picture as to how the altercation happened. Anitra testified that following an argument near the cab between Joanne, Michelle, and Annette, Michelle went back in the bar, and came back out with her group. Believing the taxi was for them, Chad went in the bar to get appellant and Steve who did not leave the bar at the same time as Chad. Back outside, Chad, with Joanne at his side, was confronted by Gary. Joanne joined in the argument. Gary used profanities. Joanne pushed him and he grabbed her by the wrists. Gary let go. Joanne was about to strike him when he grabbed her by the neck, threw her on the taxi, and started choking her. Joey came to his sister's rescue and he and Gary started punching one another in the face. Gary punched Joey twice in the face. Joey punched back Gary who fell on the ground. Gary got up, charged at Joey, and the two started fighting again. The fight eventually stopped. Joey was walking away with his friends when Gary ran to him and punched him. Joey hit Gary in the face knocking him down. Appellant's group walked to the gas station. Appellant was already there.
Steve testified he was walking toward Gary and Joey to calm the situation when he saw Matt running toward Chad. Steve stopped Matt. They ended up wrestling, falling onto the ground, and punching one another. Steve did not want to fight and ended up just holding Matt on the ground. Steve eventually walked to the gas station. Steve, Anitra, and Chad testified they did not see appellant until they were at the gas station. Anitra and Chad both denied assaulting Gary. Anitra denied that anybody was kicked during the fight. Chad never observed a problem with Gary's leg.
Appellant essentially testified that he was a mere observer. Appellant stated that after he was unsuccessful at diffusing the tension between Gary and Joanne, he stepped back and witnessed the fights between Gary and Joey on one hand, and Steve and Matt on the other hand. Appellant denied touching anybody, including Gary. Appellant eventually walked to the gas station to call for a ride.
Beckner, the taxi driver, testified that while Joanne was belligerent when Gary and his group were leaving the bar to get in the taxi, Gary and his group had not done anything to provoke Joanne and her group. Beckner testified that he never observed Gary grabbing Joanne by her neck and choking her. Gary, Michelle, Tracy, and Matt denied that Gary ever grabbed Joanne by the neck and choked her. The bar owner testified she observed three men and two women "beating the heck out of" Gary. Chad testified that the bar owner was lying whereas appellant thought that the bar owner did not see well because of her impaired vision. Appellant stated that the bar owner "had real thick glasses on and * * * was looking through two window pains [sic] of glass[.]"
At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29(A). The trial court denied the motion. At the conclusion of the trial, and over appellant's objection, the trial court gave the jurors an instruction on aiding and abetting. On November 1, 2000, a jury found appellant guilty of felonious assault. Appellant was subsequently sentenced to a two-year prison term. This appeal followed in which appellant raises two assignments of error.
Assignment of Error No. I:
 THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY OF THE OFFENSE OF FELONIOUS ASSAULT.
Under this assignment of error, appellant first argues that the trial court erred by instructing jurors on aiding and abetting "without allowing the appellant to be charged with the crime of complicity and allowing a vigorous defense against the elements of the crime." Appellant also argues that his conviction for felonious assault was supported by insufficient evidence. Finally, appellant argues that his conviction was against the manifest weight of the evidence.
When reviewing the sufficiency of the evidence to support a criminal conviction,
 An appellate court's function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
In order for an appellate court to reverse a trial court's judgment on the basis that a verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony. State v. Thompkins (1997),78 Ohio St.3d 380, 389. Specifically,
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Id. at 387. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant was originally indicted on, inter alia, one count of felonious assault. R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Appellant was, however, apparently convicted for his complicity in the felonious assault offense committed against Gary. R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * aid or abet another in committing the offense[.]"
Appellant first argues that the trial court erred by instructing the jury on aiding and abetting where appellant was never charged with aiding and abetting, and where as a result, "defense counsel had no opportunity to defend against a charge that [appellant] aided and abetted in the offense by eliciting testimony from each witness in a very specific line of questioning." We disagree.
A trial court "must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." State v. Joy (1995), 74 Ohio St.3d 178, 181. It is well-settled that "the prosecution may charge and try an aider and abettor as a principal and if the evidence at trial reasonably indicates that the defendant was an aider and abettor rather than a principal offender, a jury instruction regarding complicity may be given." Statev. Tumbleson (1995), 105 Ohio App.3d 693, 697. In addition, R.C.2923.03(F) clearly states that "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." By virtue of R.C. 2923.03(F), appellant was on notice that evidence could be presented that he was either a principal offender, or an aider and abettor, and that the jury might be instructed on complicity. See Statev. Dotson (1987), 35 Ohio App.3d 135. It is therefore inconsequential that appellant was actually indicted and prosecuted for the principal offense of felonious assault rather than under the complicity statute.Tumbleson at 697.
Appellant also argues that the trial court failed to make clear that complicity in an offense requires the specific mental state required for that offense. Appellant contends that the jury was directed it could find appellant guilty of felonious assault simply by finding that appellant aided and abetted the co-defendants. Appellant contends, incorrectly, that "an aider and abettor to a felonious assault must assist the principal with the 'purpose' of causing serious physical harm." (Emphasis added.)
It is well-established that jury instructions must be reviewed as a whole. State v. Coleman (1988), 37 Ohio St.3d 286, 290. In the case at bar, Steve and appellant were both charged with felonious assault. In instructing the jury, the trial court first defined "felonious assault," "knowingly," "causation," and "serious physical harm" when it gave jury instructions regarding Steve. Thereafter, the trial court instructed the jury (1) that appellant was charged with felonious assault, (2) that a defendant may be charged as a principal offender, or as an aider and abettor, and (3) that the jury could find that appellant had knowingly caused serious physical harm to Gary, or aided and abetted in the commission of the felonious assault against Gary. The trial court then went on to define "aid" and "abet," and referred the jury to its earlier definitions of "knowingly," "causation," and "serious physical harm."
Reviewing the trial court's jury instructions as a whole, we find that although not as clear and precise as possible, they nevertheless properly instructed the jury as to the law of aiding and abetting and were not deficient or confusing. We therefore find that the trial court's instruction on aiding and abetting regarding appellant was proper. SeeState v. Musgrave (Apr. 24, 2000), Knox App. No. 98CA10, unreported.
To establish that an accused acted as an aider and abettor to a crime, the state must prove the accused incited, assisted, or encouraged the criminal act. See State v. Sims (1983), 10 Ohio App.3d 56 . An accused who is indicted as a principal may be convicted on proof that he was an aider and abettor. State v. Strub (1975), 48 Ohio App.2d 57, 62; R.C.2923.03(F).
Evidence of aiding and abetting another in the commission of a crime may be demonstrated by both direct and circumstantial evidence. Statev. Cartellone (1981), 3 Ohio App.3d 145, 150. A person's mere association with a principal offender is not enough to sustain a conviction based upon aiding and abetting. Sims at 58. "Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not aiding and abetting." Id. at 59. Similarly, mere presence at the scene is not sufficient to sustain a conviction based upon aiding and abetting. State v. Mootispaw (1996),110 Ohio App.3d 566, 570. To the contrary, there must be some level of active participation by way of providing assistance or encouragement.State v. Nievas (1997), 121 Ohio App.3d 451, 456.
Upon thoroughly reviewing the record, we find that the evidence supports a finding that appellant aided and abetted in the commission of a felonious assault offense against Gary. Although appellant testified that he was a mere observer, from the evidence adduced at trial, we find that a fact finder could infer that appellant was not merely an observer, but instead assisted in the commission of the felonious assault against Gary.
Gary testified that after Joanne struck him in the face, appellant, along with Joey and Chad, started telling Gary "fuck you, we'll kick your ass, shut the hell up." Gary also testified that after he was first assaulted by Joey and Chad, appellant joined in the assault and continuously punched and kicked him. During that time, Gary could hear, over and over, men's voices screaming "you're dead, you're fucking dead, we're going to kill you." Matt testified that when Gary was on the ground, Matt could hear the five people assaulting Gary, which included appellant, shout "die, fucker, die." Michelle witnessed appellant punch and kick Gary. Tracy testified that none of the six co-defendants were just standing and watching.
Steve, Anitra, and Chad all testified that Joey assaulted Gary and that they did not see appellant until they were at the gas station. However, Anitra also testified that her attention was focused on Joey, her boyfriend. The record shows that Steve was busy fighting with Matt and that the only thing he witnessed was Gary grabbing Joanne and throwing her on the taxi. The record also shows that while Joanne was interviewed by the police on January 1, 2000 and asked to tell her friends to contact the police, appellant, Chad, and Steve did not contact the police until January 22, 2000 when they all went to the police station together.
Faced with two conflicting versions as to who assaulted Gary and how it happened, the jury chose to resolve the conflict of evidence in favor of the state. Such resolution was clearly within the province of the jury, which heard all the evidence and observed the demeanor and candor of the witnesses. Our review of the evidence fails to persuade us that the jury lost its way and created a manifest miscarriage of justice by doing so. In accordance with the standards of review articulated above, we therefore find that appellant's conviction for felonious assault was supported by sufficient evidence and was not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.
Assignment of Error No. II:
 THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO SERVE TWO YEARS IN PRISON.
Under this assignment of error, appellant argues that the trial court erred by sentencing him to a two-year term of imprisonment rather than to a community control sanction. Appellant also argues that in imposing sentence upon him, the trial court failed to properly consider and apply the seriousness and recidivism factors under R.C. 2929.12.
It is well-established that a trial court has broad discretion in sentencing an offender. State v. Polick (1995), 101 Ohio App.3d 428,431. Unless a mandatory prison term is required, a trial court has discretion to determine the most effective way of achieving the overriding purposes of felony sentencing, which are to protect the public from future crime and punish the offender. See R.C. 2929.11(A).
Appellant was convicted of felonious assault, a second-degree felony. A presumption in favor of a prison term exists for such offense. R.C.2929.13(D). The prison term for a second-degree felony is two, three, four, five, six, seven or eight years. R.C. 2929.14(A)(2). Appellant was sentenced to two years, the minimum prison term allowable.
A trial court may, however, impose a community control sanction instead of a prison term on a second-degree felony offender. Before doing so, however, the trial court is required to find that (1) after considering the recidivism factors under R.C. 2929.12(D) and (E), a community control sanction would adequately punish the offender and protect the public from future crime, and (2) after considering the seriousness factors under R.C. 2929.12(B) and (C), a community control sanction would not demean the seriousness of the offense. R.C. 2929.13(D). Both findings are required in order for the trial court to conclude that the relevant factors which support community control sanction outweigh the presumption in favor of imprisonment.
The trial court's sentencing entry states in relevant part that:
 The Court has considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under [R.C.] 2929.11, and has balanced the seriousness and recidivism factors pursuant to [R.C.] 2929.12.
 The Court hereby finds that the defendant's conduct is more serious because the victim suffered serious physical, psychological, or economic harm.
 The Court further finds that recidivism is likely in that the defendant had been out on bail before trial or sentencing under court sanction or under post release control when the offense was committed; the defendant has a record of prior adjudications of delinquency or criminal convictions.
 * * * The Court also finds that a prison term is consistent with the purposes and principles of sentencing in [R.C.] 2929.12. * * *
 The Court further finds pursuant to [R.C.] 2929.14(B) that the shortest prison term will demean the seriousness of the defendant's conduct.
 IT IS THEREFORE ORDERED * * * that the defendant be and is hereby sentenced to confinement * * * for a period of not less than two (2) years. (Emphasis sic.)
We note at the outset that the sentencing entry incorrectly states that "the defendant had been out on bail before trial or sentencing under court sanction or under post release control when the offense was committed." There is no evidence in the record before us supporting such statement. We note that the sentencing entry also mistakenly refers to R.C. 2929.14(B) in finding that the shortest prison term would demean the seriousness of the offense. R.C. 2929.14(B) requires a trial court to impose the shortest prison term authorized for the offense unless to do so would demean the seriousness of the offense. Appellant was sentenced to the minimum prison term allowable. However, while we agree with appellant that the sentencing entry was "sloppily prepared" or inartfully drafted, we nevertheless find that the trial court did not abuse its discretion in sentencing appellant to the minimum prison term allowable for his offense rather than community control sanction.
As a result of the felonious assault, which appellant aided and abetted, Gary suffered a fractured kneecap which required two surgeries and painful physical therapy. At the time of the trial, Gary was walking with a limp, did not have full range of motion in the injured knee, and could not function without daily pain medication. During the sentencing hearing, Gary stated that as a result of the assault, he had missed several months of work while at the same time incurring "thousands of dollars' worth of medical bills." Gary stated that the injury to his knee "drastically affected" his work and career, that he could not bend his knee or ride a bicycle, and that he was on pain medication twenty-four hours a day. His wife stated that Gary cried every day about his leg. Gary's mother stated that she had to help her son financially so that he would not lose his home or car. Gary's mother also stated that as a result of the assault, Gary and his wife had to put off starting a family, and that Gary would never be able to be the physically active father he wanted to be.
During the sentencing hearing, appellant made the following statements:
 Before this went on I had a life * * *. I can't believe this is happening to me. I'm sorry, Mr. Gumbert, I'm sorry for you, but I didn't intentionally try to do nothing there. * * * I've got a three-month year-old baby out there, and she's going to grow up without me. If I get sent to prison, she won't even know me. Again, I'm sorry.
 I went out that night just to have a good time, go home; that's all I intended to do. I swear to God, I didn't mean to cause anybody no harm. Now I've got to suffer for this. I've worked hard all my life. I just don't know how I got brought into all this. And I'd like to apologize for Gary's leg, because I know; I'm a carpet installer * * * and I know that my legs, they got pain in them * * *, and I can understand what he's relating to. If he thinks I've done anything, I'd like to apologize to him and his wife for just me even being there that night.
Assuming, without finding, that appellant's foregoing statements amounted to genuine remorse under R.C. 2929.12(E), the record clearly shows, and the trial court properly found, that under R.C. 2929.12(B), Gary suffered serious physical harm and economic harm as a result of the felonious assault. In light of the record before us, we find that the trial court did not abuse its discretion in concluding that appellant's conduct in the felonious assault did not override the presumption in favor of the imposition of a prison sentence. Appellant was therefore properly sentenced to a prison term rather than to community control sanction. Appellant's second assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.