JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Bernard Johnson ("Johnson") appeals his convictions following a jury trial on two counts of burglary, two counts of kidnapping, one count of theft, one count of impersonating a police officer, and one count of disrupting public service in two consolidated cases, Case Nos. 402659 and 410155. Finding no merit to the appeal, we affirm.
 {¶ 2} The charges in this case arose out of two separate incidents implicating Johnson in burglaries of the homes of two elderly women. On August 4, 2000, Mildred Paul ("Paul"), who was eighty-two years old, received a phone call from a man who identified himself as "Detective Sergeant David." The caller told Paul that he had her granddaughter Katie with him. Paul, who did not have a granddaughter named Katie, told the caller she did not have time to talk to him. The caller responded, "There's a lot of robberies around, you better hide your money and your jewelry." Paul hung up the phone and then called the police to request that an officer come to her house.
 {¶ 3} Later that evening, while waiting for the police to arrive, Paul heard someone pounding on her door. When she peered through the peephole, the man outside her door identified himself as "Sergeant David" and showed her a badge. Paul opened the door and discovered that the man had removed her storm door. She also observed a second man in her yard. The two men entered her house without her permission.
 {¶ 4} One of the men guarded Paul while "Sergeant David" searched her bedroom, pulling open drawers, purses, and closets. After ransacking the bedroom, "Sergeant David" proceeded to the dining room and searched the buffet. Meanwhile, the man who was guarding Paul searched through the pockets of her clothes and took some change. He then searched her purse and took her credit card and money.
 {¶ 5} After searching her home and taking various items, "Sergeant David" ripped the telephone from the kitchen wall and took it with him when he left the house. The second man followed shortly thereafter, telling Paul she should count to 100 before she leaves. Paul went to a neighbor's house to call the police.
 {¶ 6} At trial, Officer Jeffrey Ryan testified that he responded to the call within five minutes. He saw that Paul's house had been ransacked, but she was unable to describe her intruders. Officer Ryan stayed with her until Det. Reynolds of the Scientific Investigation Unit arrived. Det. Reynolds "lifted" a latent fingerprint from a dresser in Paul's bedroom as evidence.
 {¶ 7} On August 14, 2000, Margaret Daus, a ninety-year-old woman who lived alone, was visited by three men who came knocking on her door. Two of the men requested permission to look at the outside of her house. While the two men proceeded to the back of the house, the third man, who remained on the porch, entered her house without her permission. The man stood guard over Daus, who sat in a chair, while the other two men entered the house through the back door and proceeded to her bedroom where they searched every purse, box, and drawer. After collecting whatever valuables they could find, the two men came back downstairs and the three men left.
 {¶ 8} Officer Brian Lockwood, who responded to the call to Daus' home, noticed immediately that the home had been burglarized. Daus was unable to give a detailed description of the intruders. Det. Donald Meel found a latent fingerprint on a cedar chest in Daus' bedroom and collected it as evidence.
 {¶ 9} At trial, Felicia Wilson, a latent fingerprint expert with the Cleveland Police Department, testified that she examined the fingerprints lifted from Paul's dresser and Daus' cedar chest and found that they matched Johnson's fingerprints.
 {¶ 10} The jury found Johnson guilty on all counts. The court sentenced him in Case No. 402659 to eight years for burglary, and eight years for kidnapping, to be served concurrently, but consecutive to his sentence in Case No. 410155. In Case No. 410155, the court sentenced Johnson to eight years each for burglary, disrupting public service, and kidnapping. The court also sentenced Johnson to eighteen months for theft, with an elderly specification, and five years for impersonating a police officer. All sentences in Case No. 410155 were to be served concurrently except for impersonating a police officer. Thus, Johnson's total combined sentences in Case Nos. 402659 and 410155 is twenty-one years.
 {¶ 11} Johnson appeals his conviction and sentence, raising seventeen assignments of error.
 Speedy Trial {¶ 12} In his first assignment of error, Johnson argues he was denied due process of law when the trial court overruled his motion to dismiss, which was based on the alleged denial of his right to a speedy trial.
 {¶ 13} R.C. 2945.71(C)(2) provides that a person against whom a felony charge is pending shall be brought to trial within 270 days after his arrest. For purposes of computing the time, 2945.71(E) states that each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three days. In other words, "a felony defendant in Ohio must be tried within ninety days if incarcerated on the pending charge or within two hundred seventy days if on bail." State v.Coleman (1989), 45 Ohio St.3d 298, 304.
 {¶ 14} However, the triple-count provision in R.C. 2945.71(E) applies only to defendants held in jail in lieu of bail solely on the pending charge. State v. Brown (1992), 64 Ohio St.3d 476, 479; State v.MacDonald (1976), 48 Ohio St.2d 66, paragraph one of the syllabus. If the defendant is in jail on a separate unrelated case, the three-for-one provision does not apply. R.C. 2945.72(A); State v. Coleman, supra.
 {¶ 15} In the instant case, Johnson claims he was arrested on September 15, 2000 and was not brought to trial until October 22, 2001. However, when Johnson was arrested in September 2000, he was held in connection with five separate cases. Each of those cases involved different crimes and different victims.
 {¶ 16} Although Johnson argues speedy trial limits cannot be extended by filing separate cases which the prosecutor claims should be tried as one case, only two of the five cases were consolidated and tried together in the instant matter. Johnson was not indicted on the two consolidated cases presented in the instant appeal, Case Nos. 402659 and 410155, until February 23, 2001 and July 19, 2001, respectively. Prior to those dates, Johnson was being held on three "older" cases. Therefore, because Johnson was being held in connection with multiple cases, the triple-count provision in R.C. 2945.71(E) did not apply.
 {¶ 17} As previously stated, in Case No. 402659, Johnson was indicted on February 23, 2001. In case number 410155, Johnson was not indicted until July 19, 2001. These cases went to trial on October 22, 2001, 241 days after the February 23 indictment. Therefore, because these cases went to trial within 270 days from the date of the first indictment and Johnson was detained pending multiple cases, Johnson's right to speedy trial was not violated. Therefore, the first assignment of error is overruled.
 Amended Indictment {¶ 18} In his second assignment of error, Johnson argues the trial court violated his constitutional right to due process when the court permitted an amendment of the indictment to substitute the name of a different victim.
 {¶ 19} Pursuant to Crim.R. 7(D), the trial court has the discretion to amend the indictment at any time before, during, or after a trial "provided no change is made in the name or identity of the crime charged." Crim.R. 7(D); State v. Brooks (1996), 75 Ohio St.3d 148, 159. If an amendment is made to the substance of the indictment, the accused is entitled to a discharge of the jury on his motion and reasonable continuance if he was misled or prejudiced by the amendment. State v.O'Brien (1987), 30 Ohio St.3d 122, 125-126.
 {¶ 20} However, "an amendment to an indictment which changes the name of the victim changes neither the name nor the identity of the crime charged." State v. Owens (1975), 51 Ohio App.2d 132, 149; State v.Smith, Cuyahoga App. No. 79527, 2002-Ohio-2145. Because the name of the victim is not an essential element of the crime, the name of the victim is not required in the indictment. Owens, supra. Moreover, Johnson was not prejudiced by the amendment because he previously received discovery from the State providing him the correct name of the victim. Therefore, the second assignment of error is overruled.
 Prior Arrest Record {¶ 21} In his third assignment of error, Johnson argues the trial court violated Johnson's right to due process and a fair trial when it allowed a witness to mention his previous arrest record in the presence of the jury.
 {¶ 22} During the examination of Felicia Wilson, a fingerprint examiner for the City of Cleveland, the witness explained that she obtained a fingerprint card to make a comparison of Johnson's fingerprints from an earlier arrest of Johnson. As soon as Wilson made this statement, the court instructed the jury that the fact that Johnson was previously arrested is totally irrelevant. Notwithstanding the court's curative instruction, defense counsel moved for a mistrial, which the court denied. Johnson claims the court erred in denying his motion for mistrial.
 {¶ 23} The grant or denial of a mistrial lies within the sound discretion of the trial court. State v. Glenn (1986), 28 Ohio St.3d 451. We presume that the jury followed curative instructions given to it by the trial judge. State v. Loza (1994), 71 Ohio St.3d 61, 75. The trial court need not declare a mistrial unless "the ends of justice so require and a fair trial is no longer possible." State v. Garner (1995),74 Ohio St.3d 49, 59. Citing, State v. Glenn (1986), 28 Ohio St.3d 451.
 {¶ 24} In Garner, the defendant objected and moved for a mistrial after an officer testified that he made arrests at the defendant's address in the past. Id. The trial court immediately sustained the objection and admonished the jury not to consider the testimony. The Ohio Supreme Court affirmed the trial court's denial of a mistrial, finding that "the reference to the defendant's prior arrests was fleeting and was promptly followed by a curative instruction." Id.
 {¶ 25} In the instant case, as in Garner, the reference to Johnson's arrest record was a brief and isolated remark followed by a curative instruction from the court. The mere mention of Johnson's arrest record, without more, did not unfairly prejudice Johnson so as to warrant a mistrial. Therefore, the third assignment of error is overruled.
 Victims' Statements to Police {¶ 26} In his fourth assignment of error, Johnson argues the trial court violated his right to due process when it allowed Officers Ryan and Lockwood to relate their interviews with each of the victims. Johnson also claims the court erroneously allowed Det. Karlin to testify about Paul's identification of suspects from photographs.
 {¶ 27} Johnson argues the victims' statements to the officers constituted inadmissible hearsay. The State claims their statements were excited utterances and, therefore, admissible as exceptions to the hearsay rule.
 {¶ 28} Evid.R. 802 generally prohibits the admission of hearsay, which is defined as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). However, under Evid.R. 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible as an exception to the hearsay rule if certain conditions are met. Evid. R. 803(2).
 {¶ 29} For a statement to be admissible as an excited utterance, (1) there must have been an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must have related to the startling event; and (4) the declarant must have personally observed the startling event. State v. Taylor (1993),66 Ohio St.3d 295, 300-301; State v. Duncan (1978), 53 Ohio St.2d 215, paragraph one of the syllabus. "There is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought." Taylor, supra at 303.
 {¶ 30} Further, "the admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." State v. Wallace (1988), 37 Ohio St.3d 87, 93.
 {¶ 31} In the instant case, both victims' statements were excited utterances. The officers testified that Paul and Daus were visibly shaken and frightened when the police arrived shortly after the home invasions. When Officer Ryan first arrived at Daus' home, she was too afraid to open her door because the perpetrator of the burglary had impersonated a police officer. Because these women were still under the stress of having their homes invaded and burglarized, their statements to police, which were made within hours of these events, constitute excited utterance exceptions to the hearsay rule and were admissible.
 {¶ 32} With regard to Det. Karlin's testimony regarding Paul's identification of suspects from photos, it is evident from the transcript that defense counsel opened the door to this testimony. Despite the fact that neither Paul nor the prosecutor mentioned the photos on direct examination, defense counsel asked:
 {¶ 33} "Q: How many picture — on June 30th, is that when you showed her the pictures?
 {¶ 34} A: Yes.
 {¶ 35} Q: Okay. How many pictures did you show her?
 {¶ 36} A: Six.
 {¶ 37} Q: She couldn't identify anybody on there positively; is that right?
 {¶ 38} A: Correct.
 {¶ 39} Q: Was his picture in there, Bernard Johnson's?
 {¶ 40} A: Yes, it was."
 {¶ 41} The defense, having brought up the photos in the first instance and then asking whether the defendant's photo was among them, opened the door for the prosecutor to question the witness further. Having opened the door, the defense waived any right to object to the admission of the witness' testimony regarding those photos on redirect. Accordingly, the fourth assignment of error is overruled.
 Fingerprint Comparison {¶ 42} In his fifth assignment of error, Johnson argues that Felicia Wilson, a fingerprint examiner for the City of Cleveland, should not have been permitted to testify as an expert because she lacked the training and experience necessary to qualify as an expert.
 {¶ 43} A witness may testify as an expert if, among other things, the witness "is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Evid.R. 702(B). An expert need not be the best witness on a particular subject, but he or she must be capable of aiding the trier of fact in understanding the evidence or determining a fact in issue.Lambert v. Shearer (1992), 84 Ohio App.3d 266, 275. A trial court's determination to allow a witness to testify as an expert will not be reversed absent an abuse of discretion. State v. Mack (1995),73 Ohio St.3d 502, 511.
 {¶ 44} In State v. Lovings, Franklin App. No. 97APA05-656, 1997 Ohio App. Lexis 6023, the court held that the fingerprint examiner in that case was qualified to testify as an expert because she had been a fingerprint technician with the Columbus police for eight years and "a latent fingerprint examiner for the last three years." She also completed several courses on latent fingerprint comparisons, latent palm print comparisons, latent print photography, and latent print processing. Id. at *14. She also completed a six-month basic fingerprint course covering fingerprint pattern recognition and ink fingerprint comparisons in 1983 while she was an employee of the FBI. See also, State v. Johnson, 3rd Dist. No. 1-84-21985, Ohio App. Lexis 7272 (witness who worked as fingerprint examiner for police department for over 20 years and attended fingerprint training at FBI was qualified as an expert).
 {¶ 45} In the instant case, Wilson testified that she had worked as a fingerprint examiner with the Cleveland Police Department for five and one-half years. She also testified that she was trained by the FBI to be a fingerprint examiner and had taken an advanced latent training class and received on-the-job training. She testified that she had identified over 1,000 people by comparing fingerprints. Therefore, she qualified as an expert to testify about the fingerprints found at the victims' homes.
 {¶ 46} Johnson also argues that fingerprint identification is not reliable, scientific evidence. In determining the admissibility of scientific evidence, the Ohio Supreme Court in Miller v. Bike AthleticCo. (1998), 80 Ohio St.3d 607, adopted the test set forth by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc.
(1993), 509 U.S. 579. The Daubert court stated that a court must analyze the testimony and determine if the reasoning or methodology used is scientifically valid. Miller, supra at 611, citing Daubert,509 U.S. at 592-593. The court further stated that "in evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subject to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology used has gained general acceptance." Id., citing Daubert, 509 U.S. at 593-594.
 {¶ 47} The Ohio Supreme Court has recognized the use of fingerprints for identification purposes in criminal cases, stating "fingerprints corresponding to those of the accused are sufficient proof of his identity to sustain his conviction, where the circumstances show that such prints, found at the scene of the crime, could only have been impressed at the time of the commission of the crime." State v. Miller
(1977), 49 Ohio St.2d 198, syllabus. There is no dispute that the fingerprints in the instant case were found at the crime scenes and that the circumstances indicate that such prints could only have been impressed at the time of the commission of the crimes.
 {¶ 48} Therefore, the fifth assignment of error is overruled.
 Fingerprint examination {¶ 49} In his sixth assignment of error, Johnson argues the trial court violated his constitutional rights when it required him, over objection, to submit to a fingerprint examination during the course of the trial. Although Johnson claims a substantial constitutional right was violated, he does not specify what right or rights he claims were violated.
 {¶ 50} In support of his argument, Johnson relies on Davis v.Mississippi (1961), 394 U.S. 721, and Dunaway v. New York (1979),442 U.S. 200, both of which held that fingerprint evidence should have been excluded as improperly obtained during illegal seizures in violation of the Fourth and Fourteenth Amendments. In contrast to these cases, Johnson does not claim he was illegally detained when his fingerprints were taken. Rather, he seems to be arguing that it was improper for the court to allow his fingerprints to be taken during the course of the trial as though it were compelled testimony in violation of the Fifth Amendment.
 {¶ 51} The Fifth Amendment privilege against self-incrimination protects an accused "only from being compelled to testify against himself, or otherwise provide the State with other evidence of a testimonial or communicative nature * * *." Schmerber v. California
(1966), 384 U.S. 757, 761. "It offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling `communications' or `testimony,' but that compulsion which makes a suspect or accused the source of `real or physical evidence' does not violate it." Id. at 764. See, also, UnitedStates v. Wade (1967), 388 U.S. 218. Moreover, the presence of the jury does not enlarge the scope of the privilege against self-incrimination with respect to the taking of fingerprints. United States ex rel.O'Halloran v. Rundle (E.D. Pa. 1967), 266 F. Supp. 173, affirmed (1967),384 F.2d 997, certiorari denied (1968), 393 U.S. 860, 21 L.Ed.2d 128,89 S.Ct. 138. Therefore, we do not find that the court violated any constitutional right when it required Johnson to submit to a fingerprint examination during the trial. Accordingly, the sixth assignment of error is overruled.
 Other Acts Evidence {¶ 52} In his seventh assignment of error, Johnson claims he was deprived of a fair trial because the court gave the following jury instruction:
 {¶ 53} "Now as you consider the events of August 4th and August 14th, you must examine separately the evidence relating to each date.
 {¶ 54} That is to say you look at the evidence and you say what does it prove as to August 4th, and you look at the evidence against and you say what does it prove as to August 14th?
 {¶ 55} If the State establishes beyond a reasonable doubt that the defendant committed an offense on that date, it does not necessarily follow that he committed any of the alleged crimes on the other date.
 {¶ 56} You may consider, however, whether the conduct on one date was so similar to the conduct on the other date, that the conduct on each date was part of a unique common plan or scheme. That is, that the shared unique qualities indicate that the defendant participated in the offenses on each of these dates.
 {¶ 57} It's kind of like saying that there was a trademark that, you know, that may or may not be true but if you come to that kind of conclusion, then you can draw the appropriate conclusions from it."
 {¶ 58} Pursuant to Crim.R. 8(A), the trial court allowed two of Johnson's pending criminal cases to be consolidated because they involved crimes of the same character. Many courts have held that joinder is appropriate where the separate offenses evidence a common scheme or plan and thus invite juries to draw conclusions. See, e.g., State v.White-Barnes, Ross App. No. 93 CA 1994, 1995 Ohio App. LEXIS 2001; Statev. McKenzie, Cuyahoga App. No. 48959, 1985 Ohio App. LEXIS 6267. Joinder is permitted because the jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated. State v. Roberts (1980), 62 Ohio St.2d 170.
 {¶ 59} Even if the trials were separated, evidence concerning the first incident would have been admissible in a subsequent trial under Evid.R. 404(B) to show a course of criminal conduct involving a common scheme or plan, as well as the identity of the criminal. See McKenzie, supra at *6, Evid.R. 404(B). Moreover, the court instructed the jury to examine the evidence as it relates to each case separately. Indeed, the court informed the jury that simply because the State proves beyond a reasonable doubt that the defendant committed one of the offenses, does not mean the State necessarily proved the other. Therefore, we find nothing prejudicial about this instruction, and the seventh assignment of error is overruled.
 Disrupting Public Service {¶ 60} In his eighth assignment of error, Johnson claims the trial court violated his right to due process when it gave erroneous jury instructions on the elements of disrupting public service such that it improperly amended the indictment. Because the defense failed to object to the court's charge at the time of trial, this issue is subject only to a plain error analysis. State v. Jacobs (1995), 108 Ohio App.3d 328,335, discretionary appeal not allowed (1996), 75 Ohio St.3d 1497. To constitute plain error, (1) the instruction must have been erroneous and (2) without the error, the result of the trial would have been different. State v. Campbell (1994), 69 Ohio St.3d 38.
 {¶ 61} Johnson claims the court's use of a complicity theory in its charge of disrupting public service constructively amended the indictment. In instructing on the offense of disrupting public service, the court stated:
 {¶ 62} "Disrupting public service is committed when one knowingly by damaging or tampering with property substantially impairs the ability of law enforcement to respond to an emergency.
 {¶ 63} The State claims that this crime was committed when someone participated in the activities at Mildred Paul's home, the alleged burglary of Mildred Paul's home, pulled the telephone from the wall.
 {¶ 64} The State does not say which of the individuals pulled the phone from the wall. It asserts that the defendant is guilty under the concept of complicity."
 {¶ 65} Pursuant to R.C. 2923.03(F), a charge of complicity may be stated in terms of R.C. 2923.03 or in terms of the principal offense.State v. Caldwell (1984), 19 Ohio App.3d 104. Where one is charged in terms of the principal offense, he is on notice, by operation of R.C.2923.03(F), that evidence could be presented that the defendant was either a principal or an aider and abettor for that offense. See Statev. Dotson (1987), 35 Ohio App.3d 135. Because a charge of complicity may be stated in terms of either the principal offense or in terms of R.C.2923.03, the complicity section, the indictment was not amended when the court instructed the jury that they could find Johnson guilty under the complicity theory. Therefore, the eighth assignment of error is overruled.
 Identity of the Perpetrator {¶ 66} In his ninth assignment of error, Johnson argues the court usurped the fact-finding role of the jury when the judge stated in his charge that the central issue in the case was not whether the crimes occurred but whether Johnson was the perpetrator of the crimes. During the charge, the court stated:
 {¶ 67} "What do you think about the credibility of the witnesses, because that, I think, is what this case is all about. I don't think — I didn't hear a serious dispute here that a burglary, for example, was not committed. I think the central issue here for the primary charges certainly is did the defendant do it, or did they have the wrong person?"
 {¶ 68} Jury instructions are reviewed in their entirety to determine if they contain prejudicial error. State v. Porter (1968),14 Ohio St.2d 10. The court commits error if it states its opinion regarding the facts while instructing the jury. State v. Nutter (1970),22 Ohio St.2d 116. Therefore, the court erred when it stated there was no dispute that a burglary had been committed, but we find this error harmless.
 {¶ 69} To find harmless error, a reviewing court must be able to "declare a belief that the error was harmless beyond a reasonable doubt."State v. Bayless, 48 Ohio St.2d 73, at paragraph seven of the syllabus. Thus, it is the job of the reviewing court to assess the impact of the error on the outcome of trial.
 {¶ 70} At the conclusion of the charge, defense counsel voiced his concern about the court's statement of its opinion that a burglary had been committed. In response, the court gave the following curative instruction:
 {¶ 71} "I've been asked to make clear that all of the elements of proof are disputed here so that when I said there's no dispute about burglary or something like that, the State has to prove a burglary, it has to prove a burglary was committed and that it was committed by the defendant. It has to prove each of these things, so in a legal sense, everything is disputed, okay?"
 {¶ 72} Juries are presumed to follow and obey the curative instructions given by a trial court. Loza, supra.
 {¶ 73} Further, the court's statement about there being no dispute about a burglary being committed is not prejudicial when the charge and the evidence is viewed as a whole. Throughout the charge, the court repeatedly stated that the jury has the sole responsibility of evaluating the evidence and deliberating on each element of each offense. For example, the court instructed: "Your only concern is to decide what facts have been proved and whether or not those facts prove one or more of the offenses that are charged in this case beyond a reasonable doubt." The court also explained: "The defendant has entered a plea of not guilty and since he has entered a plea of not guilty, he denies the existence of all the elements of these offenses as they may relate to him," and "You, ladies and gentlemen, have the exclusive responsibility to decide what the facts are."
 {¶ 74} Moreover, the evidence overwhelmingly proved that two burglaries occurred and there was no evidence or testimony to the contrary. Indeed, even defense counsel admitted in closing argument that "these events" occurred but argued the evidence was insufficient to prove that Johnson was the perpetrator. Therefore, because we find the court's error harmless, the ninth assignment of error is overruled.
 Culpable Mental State {¶ 75} In his tenth assignment of error, Johnson argues the trial court erred when it did not identify in its jury instructions a specific culpable mental state for the crime of impersonating a police officer. Because Johnson failed to object to the instruction at the time of trial, this issue is reviewed only for plain error. Jacobs, supra; Campbell, supra.
 {¶ 76} Johnson was charged with impersonating a police officer in violation of R.C. 2921.51(E) which provides: "No person shall commit a felony while impersonating a peace officer, a private police officer, or an officer, agent, or employee of the state." This section does not specifically identify a culpable mental state. R.C. 2901.21(B) provides:
 {¶ 77} "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 78} In State v. Cheraso (1988), 43 Ohio App.3d 221, 223, the court found that: "* * * when a statute reads, `No person shall * * *,' absent any reference to the requisite culpable mental state, the statute is clearly indicative of a legislative intent to impose strict liability." Because R.C. 2921.51 provides that "[n]o person shall commit a felony while impersonating a police officer," it is a strict liability crime which may be proven without regard to culpable mental state. Therefore, the trial court's instruction was proper and the tenth assignment of error is overruled.
 Complicity {¶ 79} In his eleventh assignment of error, Johnson claims he was denied due process of law and a fair trial because (1) the court's charge on complicity constructively amended the indictment, (2) the court lessened the burden of proof below the beyond-a-reasonable-doubt standard, and (3) the State was not required to prove that Johnson was the principal offender.
 {¶ 80} As previously explained, the court's charge on complicity did not constructively amend the indictment because complicity need not be stated in terms of the complicity statute but may be stated, as it was in this case, in terms of the principal offense. R.C. 2923.03(F); Dotson, supra. Therefore, a defendant suffers no prejudice when the jury is instructed on complicity even though the indictment against him never mentioned the words "complicity," "solicitation," "conspiracy," or "aiding or abetting." Dotson, supra. See, also, State v. Grimsley
(1998), 131 Ohio App.3d 44.
 {¶ 81} Further, the court did not lessen the State's burden in this case. The court explained the proof-beyond-a-reasonable-doubt standard to the jury and properly instructed them that the State must prove Johnson's guilt beyond a reasonable doubt.
 {¶ 82} Finally, the State was not required to prove that Johnson was the principal offender to obtain a conviction. It is well established that the State may charge and try an aider and abettor as a principal, and if the evidence at trial reasonably indicates that the defendant was an aider and abettor rather than a principal offender, a jury instruction regarding complicity may be given. State v. Kajoshaj, Cuyahoga App. No. 76857, 2000 Ohio App. LEXIS 3642, citing Hill v. Perini (C.A. 6, 1986),788 F.2d 406, cert. denied, 479 U.S. 934, and Anderson v. Coyle (C.A. 6, 1999), 173 F.3d 854.
 {¶ 83} Further, in order to convict an offender of complicity, the State need not establish the principal's identity; pursuant to R.C.2923.03(C), the State need only prove that a principal committed the offense. State v. Smith, Cuyahoga App. No. 43414, 1982 Ohio App. LEXIS 11957. Therefore, Johnson's eleventh assignment of error is overruled.
 Definitions of "Force" and "Trespass" {¶ 84} In his twelfth assignment of error, Johnson claims the trial court failed to define the terms "force" and "trespass" as they relate to the burglary charge and that this failure violated his right to due process. Because the defendant did not object to these instructions at the time of trial, this issue is reviewed only for plain error. Campbell, supra.
 {¶ 85} At trial, the court instructed the jury as follows:
 {¶ 86} "But let us now look at each of the particular kinds of crimes that are alleged. What kind of crime is burglary? What do we mean by burglary . . .
 {¶ 87} A burglary occurs when a person by force or stealth — excuse me, by force or deception trespasses in an occupied structure when another person who is not the accomplice of the offender is present, and when he does so for the purpose of committing in the structure a criminal offense.
 {¶ 88} Theft, for example, is a criminal offense. The force that is used need not be of any particular amount.
 {¶ 89} It need only be sufficient to accomplish entry where entry would not have otherwise occurred, so when you say that the person trespassed by force, it's only the amount that's sufficient to accomplish the entry where the entry would not otherwise have occurred.
 {¶ 90} One trespasses when he enters upon property of another without permission of a person authorized to give permission. And I'm assuming you know what the word deception means. Now I'm going to try to define just that, just the same way, what it means to you in your everyday life. There's no tricky definition of that. Okay. So that's the crime of burglary."
 {¶ 91} R.C. 2901.01(A) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In State v. Lane (1976), 50 Ohio App.2d 41,45, the court held that force may properly be defined as "effort" rather than "violence" in a charge to the jury. A defendant is not prejudiced if there is no substantial difference between the statutory definition of a term and the definition that the trial court provided to the jury. Lane, supra.
 {¶ 92} The court's definition of "force" as "the amount of force necessary to accomplish entry where the entry would not otherwise have occurred," comports with the statutory definition of "force" which simply requires effort be exerted against a person or thing. Accordingly, we find no substantial difference between the statutory definition of "force" and that given by the trial court.
 {¶ 93} R.C. 2911.21(A)(1) defines "trespass" as follows: "No person, without privilege to do so, shall . . . [k]nowingly enter or remain on the land or premises of another." Here, the court instructed the jury, "One trespasses when he enters upon property of another without permission of a person authorized to give permission." Again, we find no substantial difference between the statutory definition and that given by the court. Therefore, the twelfth assignment of error is overruled.
 Motion for Judgment of Acquittal as to Indictment Involving Mildred Paul {¶ 94} In his thirteenth assignment of error, Johnson argues the trial court erred in denying his motion for judgment of acquittal. Specifically, Johnson argues the verdict was against the manifest weight of the evidence and there was insufficient evidence to support the convictions because Paul was unable to identify Johnson as the perpetrator.
 {¶ 95} Crim.R. 29(A) provides in part:
 {¶ 96} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 97} A motion for acquittal may be granted only where the evidence is insufficient to sustain a conviction. Crim.R. 29(A); Statev. Apanovitch (1987), 33 Ohio St.3d 19, 23. In reviewing the sufficiency of the evidence in a criminal case, an appellate court will not reverse a conviction where there is substantial evidence, viewed in a light most favorable to the prosecution, which would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 273, State v. Bridgeman (1978), 55 Ohio St.2d 261,263.
 {¶ 98} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, reconsideration denied (1997),79 Ohio St.3d 1451 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting evidence"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 99} After careful review of the record, we find that the State presented substantial credible evidence which would allow reasonable minds to conclude that all of the material elements of the offenses at issue in this case were proven beyond a reasonable doubt. Paul testified that a man knocked on her door and claimed to be "Sergeant David." She testified that when she peered through the door, he showed her a badge and thus represented himself as a police officer. Further, Paul testified that when she opened the door, "Sergeant David" and another man entered her home without her permission.
 {¶ 100} Paul also stated that the men forced her into her bedroom where one of them guarded her while the other searched her drawers, purses, and closets, taking any valuables he could find. They took change from her pockets, and money and a credit card from her purse. Finally, she stated that as they were leaving, "Sergeant David" ripped the telephone out of the wall.
 {¶ 101} A fingerprint examiner testified that the fingerprint evidence collected from Paul's home from an item touched by "Sergeant David" was positively identified as matching Johnson's fingerprint. According to Paul's testimony, there was no reason for Johnson's fingerprint to be inside her home other than as a result of the burglary. Based on this evidence, reasonable jurors could conclude that Johnson committed the burglary, theft, impersonating a police officer, disrupting public service, and kidnapping of Paul. Therefore, the court's decision to deny the motion for acquittal was proper, and the thirteenth assignment of error is overruled.
 Motion for Judgment of Acquittal as to Indictment Involving Margaret Daus {¶ 102} In his fourteenth assignment of error, Johnson argues the trial court erred in denying his motion for judgment of acquittal as to the indictment involving Margaret Daus. Specifically, Johnson argues the verdict was against the manifest weight of the evidence and there was insufficient evidence to support the convictions because Daus could not remember seeing Johnson in her house.
 {¶ 103} As previously stated, a motion for acquittal may be granted only where the evidence is insufficient to sustain a conviction. Crim.R. 29(A); Apanovitch, supra. With regard to the manifest weight of the evidence, the conviction may only be reversed if it is not supported by sufficient competent, credible evidence keeping in mind that determinations of credibility remain within the province of the jury.
 {¶ 104} Our review the record reveals that the State presented substantial credible evidence which would allow reasonable minds to conclude that all of the material elements of the offenses charged in the indictment involving Margaret Daus have been proven beyond a reasonable doubt. Daus testified that three men entered her house without her permission. While one of the men guarded her in the kitchen, the other two men proceeded to her bedroom, where they searched every purse, box, drawer, and closet, taking any valuable items they could find. After ransacking her bedroom, the three men left her house without saying a word to her.
 {¶ 105} Although Daus testified that she could not identify the perpetrators, a fingerprint examiner testified that the fingerprint evidence collected from her home was positively identified as being Johnson's fingerprint. According to Daus, there was no reason Johnson's fingerprint would be found inside her house other than as a result of the burglary. Based on this evidence, reasonable jurors could conclude that Johnson committed the burglary and participated in the kidnapping of Daus. Therefore, the court did not err in overruling Johnson's motion for judgment of acquittal and the fourteenth assignment of error is overruled.
 Motion to Dismiss {¶ 106} In his fifteenth assignment of error, Johnson argues the trial court erred in denying his motion to dismiss the count of disrupting public service when there was no evidence to support all the elements of that offense.
 {¶ 107} R.C. 2909.04(A)(3) provides:
 {¶ 108} "No person purposely by any means, or knowingly by damaging or tampering with any property, shall substantially impair the ability of law enforcement officers, firefighters, rescue personnel, emergency medical services personnel, or emergency facility personnel to respond to an emergency, or to protect and preserve any person or property from serious physical harm."
 {¶ 109} This court has held that where one purposely disconnects the victim's telephone service, the crime of disrupting public service has been committed. State v. Coker, Cuyahoga App. No. 74785, 1999 Ohio App. LEXIS 4291, citing State v. Brown (1994), 97 Ohio App.3d 293.
 {¶ 110} In this case, Paul testified that the perpetrator ripped the telephone from the wall and took it with him when he left the house and that she had no means of calling the police. Thus, Johnson made it impossible for Paul to initiate or receive telephone calls at her home. Therefore, there was sufficient evidence to support a conviction of disrupting public service and the fifteenth assignment of error is overruled.
 Allied Offenses {¶ 111} In his sixteenth assignment of error, Johnson argues the trial court violated his right to due process when it failed to merge various offenses. Specifically, Johnson claims that pursuant to R.C.2941.25, burglary and kidnapping and burglary and theft are "allied offenses of similar import" and, therefore, the trial court should not have convicted and sentenced him for all of these offenses.
 {¶ 112} R.C. 2941.25 provides:
 {¶ 113} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 114} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 115} In applying this statute, a two-step analysis has been developed. See State v. Logan (1979), 60 Ohio St.2d 126, and State v.Mitchell (1983), 6 Ohio St.3d 416. First, we must look to see if the elements of the two crimes correspond to such a degree that the commission of one offense will naturally result in the commission of the other. Mitchell, supra, at 418. If we find the two crimes to be allied offenses of similar import, then we must determine, under R.C. 2941.25(B), whether the offenses were committed separately or with a separate animus as to each.
 {¶ 116} When comparing the elements of kidnapping, burglary, and theft, it is obvious that any of these offenses could be committed without also committing the others. "Aggravated burglary" is defined in R.C. 2911.11, which provides in relevant part:
 {¶ 117} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense [* * 595] as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:
 {¶ 118} (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 {¶ 119} (2) The offender has a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;
 {¶ 120} (3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present."
 {¶ 121} "Theft" is defined in R.C. 2913.02 as follows:
 {¶ 122} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:
 {¶ 123} (1) Without the consent of [* * * 7] the owner or person authorized to give consent;
 {¶ 124} (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
 {¶ 125} (3) By deception;
 {¶ 126} (4) By threat."
 {¶ 127} These two offenses do have some common elements in that aggravated burglary may, as in this case, involve the purpose to commit a theft offense. However, completion of the theft offense is not a necessary element because the purpose to commit any felony will suffice to supply the requisite intent. Therefore, burglary and theft are not allied offenses. See Mitchell, supra.
 {¶ 128} Similarly, burglary is not an allied offense of kidnapping. State v. Watkins, Montgomery App. No. 10252, 1987 Ohio App. LEXIS 9278. Kidnapping is defined by R.C. 2905.01, which states in pertinent part:
 {¶ 129} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes:
 {¶ 130} * * *
 {¶ 131} (2) To facilitate the commission of any felony or flight thereafter."
 {¶ 132} We find that the commission of kidnapping will not necessarily result in the commission of aggravated burglary and vice versa. Aggravated burglary requires the commission of a felony in connection with a trespass. These elements are not required to commit kidnapping. Therefore, kidnapping and burglary are not allied offenses of similar import and Johnson could be convicted and sentenced for burglary, kidnapping, and theft under both indictments in this case. Accordingly, the sixteenth assignment of error is overruled.
 Consecutive Sentences {¶ 133} In his seventeenth assignment of error, Johnson argues the trial court improperly sentenced him to consecutive prison terms. Specifically, Johnson argues the trial court inappropriately imposed consecutive prison terms because Johnson refused to assist law enforcement in apprehending the other participants involved in these crimes. He also claims that the burglaries in these cases do not constitute the worst forms of the offense and that the court failed to state its reasons for imposing consecutive sentences.
 {¶ 134} The court's decision to impose consecutive sentences was not based solely on the fact that Johnson refused to assist in apprehending the other participants involved in these crimes. The court sentenced Johnson according to the applicable terms of the sentencing statute.
 {¶ 135} R.C. 2929.14(E)(4) provides, in pertinent part:
 {¶ 136} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 137} * * *
 {¶ 138} (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 139} At sentencing, the court stated:
 {¶ 140} "These were both elderly persons. The most pathetic situations. Women living alone. One woman, as was pointed out, who lived at this location for 90 years. And I think the only reason that the trauma to the 90-year-old was manifest more severely is that she's just — she's not a mentally very able person. I mean, she obviously was suffering a lot of deficiencies, although incidentally she was articulate and she knows what's going on at the moment, but her, you know, her memory about what happened is not — was not good.
 {¶ 141} But the other woman's memory was very good, the 82-year-old, and she's clearly traumatized in a very serious way by this. She can't live the independent life that she was physically able to lead, taking care of herself and everything. And now she's so frightened she has to live with her families and are so concerned. And, of course, this was committed while he was on probation.
 {¶ 142} He's got four prior imprisonments. He shows no remorse. You've done this kind of thing in the past. I agree with Miss Tiburzio, this man will probably be a danger to older people for the rest of his life.
 {¶ 143} So I can't come to any conclusion except that this is a person who has the greatest likelihood of committing future crime and I think he's committed the worst form of these nonviolent burglaries, burglarizing elderly people when they're there, present in the home, selecting the most vulnerable people one can find and doing it in an organized fashion with other people, so he's getting other people to do it.
 {¶ 144} * * *
 {¶ 145} So I do not think that 21 years is disproportionate to the seriousness, Mr. Johnson, of your conduct or to the danger you pose to the public. And frankly, I think that this sentence is absolutely necessary to protect the public from you."
 {¶ 146} These statements illustrate that the court not only gave its reasons for consecutive sentences, but that the court's reasons were based on factors set forth in the sentencing statute. Accordingly, we overrule the seventeenth assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J. and ANNE L. KILBANE, J. concur.