THE STATE OF OHIO, APPELLEE, *v.*
DOTSON, A.K.A. GRIZZLEY,
APPELLANT.

(No. 5-85-26—Decided
March 13, 1987.)

*Joseph H. Niemeyer,* prosecuting attorney, and *Carol N. Perry,* for appellee.

*Richard L. Gleason,* for appellant.

COLE, C.J. This is an appeal from a judgment of conviction and sentence of the defendant, now appellant, by the Common Pleas Court of Hancock County, for the offense of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(5). In each count the defendant was charged with selling LSD (but on two different days), with a specification that he had previously been convicted of a felony drug abuse offense. In the first count the charge was for selling an amount equal to the bulk amount on December 1, 1982; in the second for selling on December 20, 1983, an amount exceeding the bulk amount but in an amount less than three times that amount. The defendant entered a plea of not guilty. There were numerous pre-trial motions, succeeded by a lengthy trial to a jury which found the defendant guilty as charged. He now appeals, asserting seven assignments of error which we will consider in the following opinion. To efficiently relate the factual material to the specific assignments of error, we will set forth those facts pertinent to each assigned error in the discussion directed to that assignment.

I. It is first contended that the trial court committed error prejudicial to the appellant in overruling a motion to dismiss charges against him and to quash in its entirety the state's evidence for the reason that the city of Findlay police "had no jurisdiction to investigate and gather evidence outside the City of Findlay."

This charge involved the selling of LSD to a police informer who was an agent of the city of Findlay Police Department. The evidence indicated that the actual sales both occurred in a trailer park near, but outside, the city limits. Appellant contends that the evidence so obtained by the informer should be quashed because the police of Findlay had no authority to investigate

crimes committed outside the city limits.

It is clear that the defendant was not arrested by a Findlay police officer. He was indicted by the grand jury and the warrant issued thereon was served and the defendant was arrested by a county sheriff. The only authorities cited by the appellant concern the limitation upon the power of a police officer to arrest. These cases support the proposition that a city police officer has no authority to effect an arrest beyond the territorial jurisdiction of the city involved. In *Cincinnati* v. *Alexander* (1978), 54 Ohio St. 2d 248, 8 O.O. 3d 224, 375 N.E. 2d 1241, the syllabus states:

"The authority granted in R.C. 2935.03 to a police officer to 'arrest and detain a person found violating a law of this state' does not confer authority upon a municipal police officer to arrest without a warrant outside the geographical boundaries of his municipality for traffic offenses observed by the officer to have been committed outside such municipal limits."

The other authority cited by appellant concerns the power to arrest or to execute a search warrant. Neither of these actions is here involved.

We are cited to no authority that city police cannot investigate criminal activity occurring in areas outside the city limits. The drug traffic does not stop at town boundaries and may have serious damaging effects upon the population of the town. We know of no reason that a city or town cannot protect its citizens and schools by initiating and conducting investigations in nearby areas. The only problem would appear to be whether the city wished to finance such investigations, a matter for city council and not for the courts. Clearly here the city police had such authority and did not attempt to,

in any way, exercise a power to arrest or to execute a search warrant beyond the city limits. Essentially they were witnesses.

It is also clear that the defendant was properly arrested by an officer with authority to do so on an indictment returned by a grand jury. It is further clear the trial court had jurisdiction over both the person of the defendant and the subject matter of the offense. The indictment was not subject to dismissal and we are not cited to, nor do we find authority requiring, the evidence of the prosecution here involved to be suppressed.

The assignment of error is not well-taken.

II. It is asserted that the trial court committed error in charging the jury upon aiding and abetting.

At the close of the state's case the prosecutor requested that the court include in its instructions to the jury a charge on aiding and abetting. It is the position of appellant that he was charged as a principal offender, but that the evidence failed to establish that he personally sold the LSD and that there was no principal offender established in any event. The trial court at the close of all evidence overruled the objection and decided to charge on aiding and abetting as to Count 1 only. All this took place before the court's instructions. Crim. R. 30(A) states:

"A party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

It is contemplated by this rule that objection to the charge will be made after the charge is given, but before the jury retires. There appears in the record no objection at this point to the instruction on aiding and abetting as to Count 1 contained in the court's charge. It would appear that the error, if any, was not properly preserved for appeal.

In any event, the assignment of error is not well-taken.

In *State* v. *Perryman* (1976), 49 Ohio St. 2d 14, 3 O.O. 3d 8, 358 N.E. 2d 1040, the fifth paragraph of the syllabus states:

"5. When the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor, a jury instruction by the trial court on that subject is proper."

It is clear from a review of the transcript that the evidence presented by the prosecution could be found to establish beyond a reasonable doubt that the defendant was guilty as an aider and abettor. Under these circumstances the charge by the trial court was fully justified.

The appellant apparently seeks to limit the express and broad holding of the syllabus to the specific factual situation involved in *Perryman, supra.* In this respect, we note the following quotation from the opinion in *Smith* v. *Klem* (1983), 6 Ohio St. 3d 16, 18, 6 OBR 13, 15-16, 450 N.E. 2d 1171, 1173:

"As to the precedential value of the second paragraph of the syllabus of [*State, ex rel.*] *Smith,* [v. *Court* (1982), 70 Ohio St. 2d 213] it is well-established that the syllabus of an opinion issued by this court states the law of the case. *DeLozier* v. *Sommer* (1974), 38 Ohio St. 2d 268, 271 [67 O.O. 2d 335]; *Cassidy* v. *Glossip* (1967), 12 Ohio St. 2d 17 [14 O.O. 2d 153], paragraph six of the syllabus; *Baltimore & Ohio Rd. Co.* v. *Baillie* (1925), 112 Ohio St. 567, paragraph two of the syllabus; *Cleveland-Akron Bag Co.* v. *Jaite* (1925), 112 Ohio St. 506; *Merrick* v. *Ditzler* (1915), 91 Ohio St. 256, 264. As

such, all lower courts in this state are bound to adhere to the principles set forth therein. *Merrick* v. *Ditzler, supra.*

"In the past, this court has examined the syllabi of several of its cases and concluded that when *obiter dictum* appears therein it must be so recognized and considered. *State, ex rel. Bd. of Edn.,* v. *Morton* (1975), 44 Ohio St. 2d 151, 153-154 [73 O.O. 2d 454]; *DeLozier* v. *Sommer, supra.* However, that determination is a function reserved exclusively for this court. Until such a determination is made, the syllabus is presumed to be the law of the case and all lower courts are bound to adhere to the principles set forth therein."

The syllabus of *Perryman, supra,* is directly applicable here.

It is further noted that a charge of complicity under R.C. 2923.03 may be charged either under that section or "in terms of the principal offense." The latter is what occurred in the present case and the defendant was on notice by virtue of this statute that evidence could be presented that he was either a principal offender, or an aider and abettor.

It is further objected that there was no evidence that there was a principal offender. It is clear from the prosecution's evidence that one David G. Withrow knowingly sold LSD to a police informant on December 1, 1983. Withrow testified:

"A. I had some LSD to get rid of and Ike Gibson wanted it, and Russell knew Ike.

"Q. Please?

"A. Russell knew Ike and they set it up so that I could get rid of the acid.

"Q. Who set it up?

"A. Russell.

"* * *

"A. Over to my house, to my trailer. They came in, I didn't have any at the time, it hadn't arrived.

"Ike was told to come back later or to get a hold of Russell later, and Russell would let him know when to get it or when we got it, and he was supposed to come back and get it. And we got it earlier the 1st, and he came back later the 1st and picked it up.

"Ike and Russell came over to my house the 1st, and I gave, I tossed Russell a little vial of acid, and he gave it to Ike, and Ike gave me the money, and Ike made a little joke about it, there being more in there than there was supposed to be, and we grabbed it back and counted them.

"* * *

"Q. So what specifically was sold then by you and Mr. Dotson?

"A. Ten hits of LSD.

"Q. And how much money was —

"A. $30.

"Q. And who paid you the money or who paid Mr. Dotson the money?

"A. Ike Gibson gave it to me."

Then clearly Withrow was the principal who was assisted, aided and abetted by Dotson, the appellant.

We find no merit in the assignment of error.

III. It is asserted that the trial court committed error, prejudicial to the appellant, by refusing to instruct the jury as to the defense of entrapment.

Again there is some doubt as to whether this alleged error was properly preserved under Crim. R. 30(A) for consideration by this court. Irrespective of this doubt, however, we conclude that the trial court did not err in not charging the jury as to the defense of entrapment. All the substantive evidence concerning the offense was presented by the prosecution, and established nothing as to entrapment, the defense presenting no evidence which would establish entrapment. The only remaining possibility would

be that the defendant, on cross-examination of the state's witnesses, produced such evidence. We have examined the record and fail to find any evidence to support such a defense. At the most, the undercover agent of the state presented the defendant with an opportunity to sell LSD and this he did, either in concert with Withrow or individually. There is nothing to indicate that the agent did more than supply a possible market, and that the market was immediately developed by the defendant into an actual sale. In *State v. McDonald* (1972), 32 Ohio App. 2d 231, 61 O.O. 2d 252, 289 N.E. 2d 583, the headnotes of the case which summarize the opinion state:

"1. Entrapment constitutes a valid defense if police officers or their agents induce a defendant to commit an offense which otherwise he had no intention of committing and, in fact, would not have committed but for the inducement of those police officers or their agents.

"2. A person is not entrapped when police officers, for the purposes of detecting crime, merely present a defendant with the opportunity to commit an offense. Under such circumstances, craft and pretense may be used by officers of the law to accomplish such a purpose.

"3. Where there is credible evidence that a defendant has the 'predisposition and criminal design' to commit acts into which he claims he was entrapped, and that he was merely provided with an opportunity to commit those acts for which he was 'apt and willing,' he has not been entrapped."

There was here evidence that the defendant had previously engaged in the sale of drugs and that he was actively so engaged prior to this offense. A police officer without objection testified:

"He told us that he had been in contact with Russell Dotson and a Dave Withrow approximately a week prior to this, and at that time they had told him that they could get LSD if he was interested in purchasing some, that he wanted to go make contact with them under our control to see if he couldn't in fact purchase LSD."

Again, the undercover agent testified:

"Q. But you went up to Mr. Dotson and asked if there was anything for sale?

"A. Yeah.

"Q. And he said he didn't know?

"A. He said he'd probably found [*sic*] out for me.

"Q. He could find out for you?

"A. Yeah.

"Q. Then what happened?

"A. Well, then he told me to stop back a couple of days, so I stopped out back there at his house, I don't know if it was the next day or day after, I'm not too sure. I stopped back out there, I was talking to him and he said I went down and seen Dave Withrow, and that's when I gave Dave the $30, and they said stop back tonight, and I stopped back that night and it hadn't come in yet, so I came back up the next night, the following night, that's when I picked up the LSD."

This testimony clearly is sufficient to indicate that the defendant was fully interested in arranging a drug sale and that the operative for the state did nothing more than open up a possible market to the defendant. The defendant, by immediately pursuing the possible sale, demonstrated both predisposition and design.

We find no merit in the assignment of error.

IV. It is asserted that the trial court erred in limiting the testimony of the defendant's wife based on her competency and privilege.

The record of the trial indicates that as part of his defense the defen-

dant called his wife to testify. Because she had been present at the purchase or negotiations, Mrs. Dotson was given the *Miranda* warning by the court and was asked if she wished to consult counsel before testifying. She indicated she so wished. Thereupon counsel was appointed. After consultation had occurred, the questioning of Mrs. Dotson was resumed. However, the court then stated:

"Mr. Gleason, we're going to voir dire this witness for the purpose of her testimony, in order to determine if she's first of all competent, the nature of her testimony, the privileges that she may or may not assert, and the rights that she may, that she has, that she may invoke.

"You may proceed.

"MR. GLEASON: Your Honor, at this time I would ask the Record to reflect the objection of doing this initial testimony on voir dire, that we ask that the jury be present."

The witness was then examined in the absence of the jury and, during this examination, numerous problems of competency and possible self-incrimination were raised. At the conclusion, defense counsel indicated that he proposed calling the witness to testify before the jury. After some discussion the trial court said:

"THE COURT: I do not intend to try the case for you. I'm not going to make any preliminary rulings. I thought it was pretty clear from what she has testified that there is a limitation on what she can testify respecting, and there is a great limitation on what the Prosecutor can inquire about on his cross-examination. What he wants to inquire about, I don't know. He may be denied effective cross-examination, I don't know, I don't know. I have no idea. All I've had is what we've heard, and what you're going to ask in front of the jury, I don't know, but I want to be very careful. She has 501 problems,

she has privilege problems. Under 501 she has competency problems and under 601 she has Constitutional problems under the United States Constitution, and nobody is going to deny her that. Not me anyway.

"This Record is for the purpose of trying to figure out what we can get her to testify for. That was for your benefit inasmuch as anybody else's. When the rule time comes to the Court, the Court will rule, in the meantime, I'm going to bring the jury in, instruct them to go to lunch and come back at a quarter to one."

Thus, the trial court refused on the basis of the voir dire to make any anticipatory or preliminary ruling on admissibility. He indicated that when a question was raised on actual examination before the jury, he would then rule.

After a considerable period devoted to other matters, jury instructions and the like, the jury was again brought in and the trial court stated:

"THE COURT: Ladies and gentlemen, you will recall Wednesday afternoon at three o'clock we had a witness on the stand, and she indicated that she wanted to have an attorney with her to assist her in her testimony. And because of that we declared a recess so that her counsel would be able to talk. In addition to that, other matters took place.

"The witness will not proceed further in this case, that will be the end of that particular witness. Mrs. Dotson is not going to testify further.

"At this time we'll ask the Defendant if he has any additional witnesses?

"Do you have any other witnesses you want to call, Mr. Gleason?

"MR. GLEASON: Your Honor, we do not have any other witnesses to call on behalf of the Defendant at this time and the defense will rest."

As we read this record, the defense

made no attempt to introduce testimony by Mrs. Dotson. The trial court therefore made no effective restrictive rulings upon her testimony since none was, in fact, elicited as part of the defendant's case. Whatever may have occurred during the voir dire hearing was not prejudicial to the appellant since the court clearly stated at its conclusion it was making no preliminary rulings on admissibility. Since the witness was never thereafter subjected to *any* questioning, the trial court made no exclusionary rulings prejudicial to the appellant.

The assignment of error is not well-taken.

V. It is asserted that the trial court committed error in overruling defendant's motion to dismiss Count 2 at the close of the prosecutor's opening statement "in which Count two (2) was changed and confused with chocolate mesc rather than LSD as was stated in discovery."

The defendant as noted was charged with selling LSD. In his opening statement, the prosecutor clearly stated that the defendant was charged with knowingly selling a controlled substance, lysergic acid diethylamide ("LSD") in an amount exceeding the bulk amount, but in an amount less than three times that amount. All of the elements of the offense are covered. Subsequently, the prosecutor said:

"On December 20th, 1983, twelve unit doses of chocolate mescaline as named by the Defendant, were sold to police informant Gibson for four dollars a hit. Once again in this case you will see twelve purple tablets that were subsequently taken to the BCI laboratory, the Bureau of Criminal Identification and Investigation State Crime Laboratory, tested to be lysergic acid diethylamide."

The defendant moved for a dismissal of Count 2 on the basis that the state had changed the offense as charged. The state had fully set forth all of the elements of the offense. R.C. 2945.10 sets forth the order of trial and the first order is:

"Counsel for the state must first state the case for the prosecution, and may briefly state the evidence by which he expects to sustain it."

Thus the statement by the prosecution did state the case for the prosecution, *i.e.*, all the essential elements to be established. The prosecutor in his discretion "may" briefly state the evidence. The state is not required to do this, but here the prosecutor chose to do so. He did not, as asserted by the appellant, substitute a new charge as to chocolate mesc, but said that twelve unit doses of chocolate mescaline *"as named by the Defendant,* were sold to police informant Gibson * * *"* (emphasis added), but these tablets on being tested were found to be LSD. Thus, there was no change in the charge. The charge was that the defendant sold LSD. The prosecutor stated this was in fact what happened, but that the defendant called the tablets chocolate mesc or chocolate mescaline, an evidentiary matter which was later at trial fully developed, and was pertinent not to the material sold, but to the issue of knowledge or intent.

In *State* v. *Karcher* (1951), 155 Ohio St. 253, 44 O.O. 258, 98 N.E. 2d 308, the first paragraph of the syllabus states:

"Where, in a criminal proceeding, the state's statement of its case indicates that the accused was charged with the offense for which he is being tried and there is no admission of fact showing that no offense was committed or that the accused was not guilty of the offense charged, a motion by the accused for judgment on such statement should be overruled."

Thus the trial court was not in error in overruling defendant's motion to dismiss Count 2.

The assignment of error is not well-taken.

VI. It is asserted the trial court committed error in that the trial judge did not remove himself from hearing the case and did not authorize the transcription of certain court proceedings that would have supported the affidavit of prejudice filed with the Supreme Court.

As noted in the assignment of error the defendant did file an affidavit of prejudice against Judge Walker, the trial judge. This is initially the concern of Section 5, Article IV of the Ohio Constitution, of which paragraph (C) reads:

"(C) The chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof. Rules may be adopted to provide for the hearing of disqualification matters involving judges of courts established by law."

The affidavit of prejudice in the present case was filed on April 10, 1985. On April 18 a notice was received from the Chief Justice of the Supreme Court stating:

"The affidavit appears to have been seasonably filed; consequently, no further action should be taken in this cause until further directions from this office."

Ultimately this was heard by the Chief Justice pursuant to the constitutional authority and the affidavit was dismissed on May 1, 1985.

In *Cuyahoga Cty. Bd. of Mental Retardation* v. *Assn. of Cuyahoga Cty. Teachers of the Trainable Retarded* (1975), 47 Ohio App. 2d 28, 37, 1 O.O. 3d 168, 173-174, 351 N.E. 2d 777, 784-785, the court stated:

"For these reasons, we hold that once the affidavit of prejudice was filed, the trial court was without authority to proceed to hear the case or to determine any matter affecting the substantial rights of the parties. * * *"

And further:

" * * * the Chief Justice also possesses the lesser included power to order a trial judge not to proceed further with the case until such time as the Chief Justice has had an opportunity to rule upon the affidavit of disqualification. * * *"

It will be noted that in the cited case an order of removal resulted. Here such an order was denied.

In the present case, then, the merits of the issue were heard and determined by the proper constitutional authority and the trial judge was under no duty to disqualify himself.

It is further contended that the defendant needed certain transcripts for the hearing before the Chief Justice of the Supreme Court. This motion was filed after the affidavit had been filed and the trial court had thereby lost its power to proceed the moment the affidavit of prejudice had been filed. If production of transcripts was needed, the matter was one for resolution by the Chief Justice upon timely and proper application for discovery in that proceeding.

The assignment of error is not sustained.

VII. It is asserted the trial court committed error in refusing the defendant's requests to stay in the Hancock County Jail.

The defendant was initially placed in confinement in the Hancock County Jail, after his arrest. Bail was set, but never posted. The defendant engaged in a hunger strike allegedly to protest jail conditions and was transferred to the Ottawa County Jail. Appellant contends he was denied his constitutional rights to consult with his counsel because of the distance involved. A request to transfer back to the Hancock County Jail was overruled.

On February 28, 1985, the defendant requested a continuance of the

trial date as more time was needed for preparation. This was granted and another later continuance was subsequently required which delayed the commencement of trial until June 3, 1985. The defense clearly had ample time for preparation.

Prior to February 28, 1985, the defendant's conduct had created the need for his transfer for confinement to Ottawa County. He was then, and through the trial, represented by court-appointed counsel whose necessary expenses, including, of course, travel expenses, were to be ultimately paid by the state.

Communication between counsel and client was within the discretion of counsel and the defendant, and there is nothing to establish that any necessary communication was prevented by the geographical factor.

The assignment of error is not well-taken.

*Judgment affirmed.*

MILLER and GUERNSEY, JJ., concur.

GUERNSEY, J., retired, of the Third Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.