JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
Following a jury trial, defendant-appellant James Ellison was convicted of aggravated robbery, an accompanying gun specification, robbery, and two counts of felonious assault. After merging the robbery offenses and the felonious-assault offenses for purposes of sentencing, the trial court imposed a five-year prison term for aggravated robbery, a three-year prison term for the gun specification, and a four-year prison term for felonious assault, and it ordered that the sentences be served consecutively. Bringing forth three assignments of error, Ellison now appeals his convictions and sentences. For the following reasons, we affirm.
In his first assignment of error, Ellison maintains that his convictions were against the manifest weight of the evidence. To reverse a conviction on the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[1] A new trial should be granted on the weight of the evidence only in exceptional cases.[2]
In this case, the issue at trial was whether Ellison was present during the robbery of Edward Williams on September 18, 2003. On that night, Williams testified, four black men robbed him at gunpoint, taking some money and his gym shoes. He testified that he was pistol-whipped by one of the assailants and shot in the buttocks by another assailant. Ellison maintained at trial that he was not present during the robbery. He presented the testimony of his girlfriend and her sister. They both claimed that Ellison had been at home playing video games on the night of the robbery. But the state presented evidence from two of Ellison's co-defendants, Martin Banks and Raymond Groomes, that Ellison had been present at and had participated in the robbery of Williams. Banks testified that Ellison had shot Williams in the buttocks with a nine-millimeter handgun before they all left the scene.
After our review of the record, we conclude that there was no manifest miscarriage of justice in this case. The jury heard the evidence and determined that the two co-defendants were more credible than Ellison's girlfriend and her sister, who was dating Ellison's brother. The jury could have easily questioned the credibility of Ellison's girlfriend because she had a motive to lie: she did not want Ellison to go to jail. Additionally, the jury could have reasonably found the two co-defendants' testimony more credible because they had already pleaded guilty and been sentenced when they testified against Ellison. At that point, there was no reason for them to lie about who had been involved in the robbery. The first assignment of error is overruled.
In his second assignment of error, Ellison asserts that prosecutorial misconduct during closing arguments violated his due-process rights and denied him a fair trial. Specifically, Ellison maintains that it was improper for the state to argue that Ellison could be found guilty as an accomplice to the charged offenses, when he was only on notice that he was charged as a principal offender.
The relevant inquiry for a claim of prosecutorial misconduct is whether the prosecutor's remarks were indeed improper, and if so, whether a substantial right of the accused was adversely affected.[3] The improper conduct of the prosecutor does not give rise to prejudicial error unless the conduct has deprived the defendant of a fair trial.[4]
After reviewing the record, we hold that the comments by the prosecutor were not improper. Under R.C. 2923.03(F), a charge of complicity may be stated in terms of R.C. 2923.03 or in terms of the principal offense. This court has previously noted that "where one is charged in terms of the principal offense, he is on notice, by operation of R.C. 2923.03(F), that evidence could be presented that the defendant was either a principal or an aider and abettor for that offense."[5] Because Ellison was on notice that he could be convicted as a principal or as an accomplice, the prosecutor's comments during closing arguments did not prejudice his due-process rights.
Ellison, citing State v. Killings,[6] maintains that this court has recognized the "inherent unfairness in having a defendant answer charges of complicity when he was not so indicted." Ellison's reliance on Killings is misplaced. InKillings, the defendant was convicted of complicity to rape, for which only his co-defendant had been indicted. We noted that the defendant's due-process rights had been violated because the defendant had "no notice either by way of his indictment or through a bill of particulars" that he could have been held accountable as an aider or abettor for the separate incident of rape committed by his co-defendant.[7] Here, Ellison and his co-defendants were all indicted for the same incident that gave rise to the charges of felonious assault and aggravated robbery. Under these circumstances, Ellison was aware of the extent of the charges against him. The jury could only consider whether Ellison was in complicity with his co-defendants for the offenses upon which he was indicted.
Because the state's argument that Ellison could be found guilty based on a complicity theory was proper, Ellison's due-process rights were not violated. Accordingly, the second assignment of error is overruled.
In his third assignment of error, Ellison maintains that the trial court erred in ordering that his prison terms be served consecutively.
To impose consecutive sentences under R.C. 2929.14(E)(4), the trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." The court must also find one of the following: (1) when the offender committed the offenses, he was awaiting trial or sentencing or was under post-release control; (2) the harm caused was so great or unusual that no single prison term would adequately reflect the offender's conduct; or (3) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.[8] In addition, the court must state its reasons for imposing consecutive sentences.[9]
In this case, the court made the requisite findings and indicated on its felony-sentencing worksheet that the harm caused was so great or unusual that no single prison term would adequately reflect Ellison's conduct.[10] The court also stated its reasons for those findings at the sentencing hearing, as required by State v. Comer.[11] The court noted that Ellison had shot the victim with a nine-millimeter handgun before leaving the scene of the crimes.
Ellison's third assignment of error is overruled, and the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Hildebrandt and Painter, JJ.
[1] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[2] Id.
[3] See State v. Cornwell, 86 Ohio St.3d 560, 570,1999-Ohio-125, 715 N.E.2d 1144, citing State v. Smith (1984),14 Ohio St.3d 13, 14, 470 N.E.2d 883.
[4] See State v. Keenan (1993), 66 Ohio St.3d 402, 405,613 N.E.2d 203.
[5] State v. Killings (May 29, 1998), 1st Dist. Nos. C-970167 and C-970247, citing State v. Dotson (1987),35 Ohio App.3d 135, 520 N.E.2d 240.
[6] Id.
[7] Id.
[8] R.C. 2929.14(E)(4)(a) through (c).
[9] R.C. 2929.19(B)(2)(c).
[10] R.C. 2929.14(E)(4)(b).
[11] 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph one of the syllabus.