OPINION
{¶ 1} Defendant-appellant, Natasha Barnes, appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty of two counts of complicity to rape. Because no reversible error exists in the trial court's decision, we affirm.
 {¶ 2} On February 2, 2000, defendant was indicted for one count of rape in violation of R.C. 2907.02 and one count of complicity to rape in violation of R.C. 2923.03 as it relates to R.C. 2907.02; defendant's father, co-defendant Randolph Ragland, was charged with two counts of rape in violation of R.C. 2907.02 arising out of the same incident. In April 2004, a bench trial was held; the court found defendant guilty of two counts of complicity to rape. The court sentenced defendant to three years for each count, to be served concurrently. Defendant appeals, assigning the following errors:
ASSIGNMENT OF ERROR NO. 1:
A Trial court commits reversible error when it overrules a motion for separate trials in a case involving a rape where the defendants are father and daughter.
ASSIGNMENT OF ERROR NO. 2:
A Trial court abuses its discretion when it proceeds to trial on a rape case that is four years old, in violation of a defendant's right to a speedy trial.
ASSIGNMENT OF ERROR NO. 3:
A Trial court abuses its discretion when it allows the prosecution to probe into the dating history of the alleged victim of a rape, over the objection of the defendant, in violation of the rape shield law.
ASSIGNMENT OF ERROR NO. 4:
A Trial court abuses its discretion and commits reversible error where it convicts a defendant for complicity to commit rape, where the indictment is silent as to a complicity charge.
ASSIGNMENT OF ERROR NO. 5:
A Trial court commits reversible error where it relies on extrinsic evidence to make its determination in a bench trial.
ASSIGNMENT OF ERROR NO. 6:
The conviction is against the manifest weight of the evidence.
 {¶ 3} Because the sixth assignment of error involves a discussion of the facts, we address it first. When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387; Statev. Thompkins (1997), 78 Ohio St.3d 380, 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the weight of the evidence are reserved for cases where the evidence weighs heavily in favor of defendant. State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 4} According to the state's evidence, the victim, a woman of 18 years, and defendant met while they were in the tenth grade of high school. During the summer months of 1999, after graduating from high school, the victim and defendant spent an extensive amount of time together. They planned on moving into the house next door to defendant's then residence at 1722 Linwood Avenue.
 {¶ 5} On August 30, 1999, the evening in question, the victim planned to spend the night at defendant's house. That same evening, the victim, her younger brother, and defendant went to Ragland's place of employment, the Jackson Pike Wastewater Treatment Facility where Ragland gave them a tour of the facility. Later that evening, the victim went to the living area in the basement of defendant's house to pack defendant's things in preparation for the move.
 {¶ 6} According to the victim, Ragland came downstairs while she and defendant were packing and gave them marijuana that they later rolled into a "blunt." The girls smoked the marijuana and drank six or seven shots of vodka that evening; the victim admits she felt very intoxicated. At some point, the victim lay on the couch in the living room; defendant lay on a chair in the same room. The victim testified she awoke to find Ragland rubbing her arm and trying to kiss her, and she told him to stop. The victim noticed that defendant went into Ragland's bedroom to lie down on the bed, so the victim did the same. The girls awoke when Ragland pushed them off the bed onto the floor.
 {¶ 7} The victim testified that at some point she passed out. When she awoke, all of her clothes were off, and both defendant and Ragland were on top of her: defendant was sitting on the victim's arms, straddling her upper body, while Ragland was on top of her lower body. The victim testified that both defendant and Ragland performed oral sex on her, and then Ragland engaged in vaginal intercourse with her. Although the victim told them both to stop, she could not get up because defendant was holding her down. When the victim told defendant and Ragland she felt as if she were going to throw up, they stopped what they were doing and let her go. The victim went to the bathroom, locked the door, and started crying.
 {¶ 8} Defendant came to the bathroom door and asked the victim what was wrong. The victim told defendant she needed a tampon; defendant retrieved one for her. The victim eventually exited the bathroom, tried to find her clothes, and put on a tank top, underwear and shoes. The victim could not locate her car keys, so she left the house and ran to a nearby Clark gas station where she encountered Scott Prindle, the night attendant; defendant followed the victim to the Clark station. The victim told Prindle she had been raped, and she asked him to call the police; she also told defendant that Ragland raped her and defendant helped him. According to the victim, defendant begged her not to call the police. Eventually, defendant left the Clark station and returned home.
 {¶ 9} The victim testified that prior to the evening in question, she felt Ragland liked her. She even had decided not to move in with defendant, next door to Ragland, because she felt uncomfortable with Ragland. The victim also testified Ragland tried to kiss her on a prior occasion; she pushed him away and told him his behavior was inappropriate.
 {¶ 10} Scott Prindle testified that around 1:45 a.m., he noticed two women run by the outside window of the Clark station where he was working that evening. He testified that the first woman, the victim, was wearing only a tank top and underwear. Prindle testified she had a "look of terror" on her face, as if "something went down." (Tr. Vol. I, 224.) According to Prindle, the victim stated she had been raped, and she asked Prindle to call the police. Prindle unlocked a side door and let them both inside.
 {¶ 11} According to Prindle, the second woman, defendant, was "begging" the victim, "please don't call the police." (Tr. 223.) Prindle recalled the victim stating to defendant, "He raped me, and you helped." Id. Prindle testified defendant left the station and later returned with a car, then left again, all without further contact with the victim. Cross-examination revealed that the statements "please don't call the police" and "[h]e raped me, and you helped" were not included in the written police report of Prindle's conversation with the police. Prindle acknowledged those statements were important, considering the nature of the crime involved.
 {¶ 12} Police detective Harold Connley testified that when he arrived at the gas station, the victim was crying and appeared very upset. Connley's statement, prepared after his conversation with the victim, reflects that Ragland raped the victim but does not address defendant's involvement. Connley acknowledged that including defendant's name as a possible suspect would have been important.
 {¶ 13} Defendant's testimony differs markedly from the victim's testimony. According to defendant, she did not smoke pot that evening, although she admits she drank alcohol. After drinking a number of shots, she fell asleep on the couch in the living room. When she woke up, she noticed the victim was not in the room. She noticed the door to her father's bedroom was cracked open, and she saw the victim on top of her father, having sex with him. Defendant testified that although she and the victim previously had discussed the propriety of a relationship between the victim and her father, defendant still was shocked when she saw them engaged in sexual conduct.
 {¶ 14} After witnessing the victim and her father, defendant went downstairs and dozed off again. She awoke to find the victim bent over her, trying to kiss her. Defendant told the victim to stop and pushed her away because she had just seen the victim with her father. Defendant testified that the victim went upstairs but came back to ask defendant for a tampon, which defendant retrieved from the downstairs bathroom.
 {¶ 15} Ragland testified to a version of events similar to that defendant offered. Ragland stated that he and the victim had a sexual relationship prior to August 30, 1999, and planned to spend that night together; the victim and defendant even came to his workplace that evening and took a tour of the facility. When Ragland returned home from work that night, he took his normal bath, got into bed and waited for the victim. According to Ragland, the victim eventually came to him, and they engaged in sexual intercourse.
 {¶ 16} Ragland claims that at some point he could no longer satisfy the victim, so the victim became frustrated, put on a T-shirt and underwear, and left the room. Ragland testified that at no time did the victim say no to him. He further testified that defendant was never in the room. The victim ultimately left the house in just a T-shirt and underwear. Ragland testified he told the victim she would get in trouble being outside without any pants, but the victim ignored him and headed in the direction of the Clark station; defendant followed the victim to the station. Ragland also testified he is a recovering addict and strongly opposes drinking and drugs; he stated he would never give anyone drugs.
 {¶ 17} Because the victim's testimony diverges so significantly from defendant's testimony, defendant contends the state did not prove complicity to rape beyond a reasonable doubt. Essentially, defendant argues the trial court should not have believed the victim. A conviction, however, is not against the manifest weight of the evidence solely because the trier of fact heard conflicting testimony. State v.Butts, Franklin App. No. 03AP-495, 2004-Ohio-1136; State v. Kendall (June 29, 2001), Franklin App. No. 00AP-1098. Indeed, credibility issues remain within the province of the trier of fact. Id.; State v. McVay (Sept. 30, 1999), Franklin App. No. 98AP-1246 (noting that "[c]redibility determinations on conflicting testimony are issues primarily reserved to the trier of fact to be second-guessed only in the most exceptional case").
 {¶ 18} Here, the conflicting stories were brought out through the testimony of the victim on one hand and the testimony of defendant and Ragland on the other, but extensive cross-examination also revealed weaknesses in the two versions. The trial court, as it was obliged to do, determined the credibility of the witnesses and chose to believe the victim's version of events. Although defendant suggests the state's witnesses could not be believed, defendant points to nothing in support of her contentions other than her assertion that the state's witnesses were not truthful. Cross-examination may have pointed out some inadequacies in the testimony of the state's witnesses, but we cannot say that the inconsistencies and omissions brought out on cross-examination so undermined the state's evidence as to render either the witnesses' testimony not worthy of belief or the trial court's verdict against the manifest weight of the evidence. Because the trial court properly could believe the victim's testimony and reject some or all of defendant's testimony, the verdict is not against the manifest weight of the evidence. Accordingly, defendant's sixth assignment of error is overruled.
 {¶ 19} Defendant's first assignment of error contends the trial court erred in overruling defendant's motion for separate trials. Defendant asserts that because her father was a co-defendant, she had the additional burden of not harming his case in any way, making joinder improper.
 {¶ 20} Crim.R. 8(B) allows joinder of defendants' cases where they are "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct." In general, joinder of defendants is encouraged as it conserves judicial resources, diminishes the inconvenience to witnesses, and decreases the chances of inconsistent results. Id. Crim.R. 14, however, provides relief if joinder prejudices a defendant. State v. Williams, Franklin App. No. 02AP-730, 2003-Ohio-5204.
 {¶ 21} Whether an accused should be tried separately from a co-defendant is a matter resting within the sound discretion of the trial court. Id. The defendant must furnish the trial court with sufficient information so that it can weigh the considerations in favor of joinder against the defendant's right to a fair trial. On appeal, a defendant must demonstrate the trial court abused its discretion in refusing to grant severance. Id. "[A] trial court does not abuse its discretion in refusing to grant severance where the prejudicial aspects of joinder are too general and speculative." State v. Payne, Franklin App. No. 02AP-723, 2003-Ohio-4891. As a result, to prove an abuse of discretion, a defendant must affirmatively demonstrate that his or her rights were prejudiced by joinder. Williams, supra; State v. Draper (Dec. 20, 2001), Franklin App. No. 01AP-237, citing State v. Torres (1981),66 Ohio St.2d 340.
 {¶ 22} Here, defendant asserts joinder prejudiced her right to a fair trial but does not affirmatively demonstrate exactly how it prejudiced her case. Rather, defendant offers mere speculation and general allegations. The offenses charged and tried were of a similar character and arose out of the same incident. Each case required the same witnesses, the evidence was direct and uncomplicated, and defendant and her co-defendant testified to a similar version of the facts. Further, because defendant's trial was to the court, concern about jurors becoming confused was eliminated. Indeed, defendant's assertions of prejudice or confusion are undermined by the trial court's verdicts: the defendant was charged with rape but was convicted only of complicity to rape; her co-defendant was convicted of actual rape. Because defendant fails to show actual prejudice and fails to demonstrate the trial court abused its discretion in refusing to sever her trial from the trial of her co-defendant, defendant's first assignment of error is overruled.
 {¶ 23} Defendant's second assignment of error contends her right to a speedy trial was violated. The Sixth and Fourteenth Amendments guarantee a criminal defendant the right to a speedy trial by the state; Article I of the Ohio Constitution independently guarantees this right. State v.Bayless, Franklin App. No. 02AP-215, 2002-Ohio-5791. Under R.C.2945.71(C)(2), a person against whom a felony charge is pending shall be brought to trial within 270 days of her arrest.
 {¶ 24} R.C. 2945.73(B) provides "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if [she] is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." Upon demonstrating that more than 270 days elapsed before trial, a defendant establishes a prima facie case for dismissal based on a speedy trial violation.Bayless, supra. The state bears the burden to prove that time was sufficiently tolled, thereby extending the speedy trial period. Id. "Hence, the proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72." Id. at ¶ 17, citing State v. DePue (1994), 96 Ohio App.3d 513, 516.
 {¶ 25} Speedy trial time is tolled by "any period of delay necessitated by reason of a plea in bar or abatement, motion * * * or action made or instituted by the accused." R.C. 2945.72(E). A demand for discovery or a bill of particulars by the defendant is a tolling event pursuant to R.C. 2945.72(E). State v. Brown, 98 Ohio St.3d 121,2002-Ohio-7040. The state's response time must be reasonable under the circumstances. State v. Risner, Seneca App. No. 13-03-40, 2004-Ohio-186 (noting that appellant's right to a speedy trial was tolled by 16 days due to appellant's discovery request where state's response time was reasonable); cf. State v. McDonald, 153 Ohio App.3d 679, 2003-Ohio-4342
(observing that the state's response to defendant's discovery after 11 months was unreasonable and did not toll the running of the speedy trial period).
 {¶ 26} Here, defendant was arrested on February 19, 2000 and was released on bond. Approximately 1,520 days passed between February 19, 2000 and the date of trial, April 5, 2004. For defendant to be tried within the constraints of R.C. 2945.71, that time must have tolled for 1,250 days. The record discloses 27 motions for continuances in which defendant waived her speedy trial rights; the majority were filed by defense counsel. By those continuances alone, without including any time tolled due to defendant's discovery demands, defendant waived 1,363 days. Subtracting 1,520 days from 1,363 leaves 157 days. Under R.C. 2945.71
et seq., the state thus had an additional 113 days to bring defendant to trial within the 270 days specified by statute. Defendant's second assignment of error is overruled.
 {¶ 27} In her third assignment of error, defendant maintains the trial court erred when it allowed the prosecution to ask questions regarding the victim's dating history. Defendant points to that juncture in the trial when, during direct examination, the prosecutor asked the victim who she called while she was waiting at the Clark station after the rape occurred. The victim responded that she called her mother and her boyfriend, Randall Shepard. The prosecutor asked the victim from where she knew Shepard and how long she had been dating him. Defendant objected, and the trial court inquired whether the objection was premised on the rape shield law. Defendant explained that the objection was on relevancy grounds, and the trial court overruled the objection.
 {¶ 28} The state argues that because defendant objected on relevancy grounds, she did not preserve an objection based on the rape shield law. An objection to evidence on one ground does not preserve an objection on another ground, absent plain error. State v. Watkins (Aug. 30, 1990), Franklin App. No. 90AP-15 (stating that an objection pursuant to Evid.R. 402 at trial did not preserve for appeal an objection based on Evid.R. 403), citing State v. Davis (1964), 1 Ohio St.2d 28. Plain error will be recognized only in exceptional circumstances to prevent a miscarriage of justice and only when the outcome of the case clearly would have been different if the admitted evidence had been excluded. Watkins, supra.
 {¶ 29} Here, it is questionable whether defendant preserved her objection premised on the rape shield law. Even if we assume defendant properly did so, defendant's contention fails. R.C. 2907.02(D) prohibits "[e]vidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity * * * unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender." Sexual activity is defined as sexual conduct or sexual contact or both. R.C. 2907.01(C). Sexual conduct includes vaginal intercourse, anal intercourse, fellatio, and cunnilingus. R.C.2907.01(A). Sexual contact includes any touching of an erogenous zone of another for the purpose of sexually arousing or gratifying either person. R.C. 2907.01(B).
 {¶ 30} Rape shield laws were enacted to prohibit extremely inflammatory and prejudicial evidence that is only marginally probative.State v. Cotton (1996), 113 Ohio App.3d 125, citing State v. Gardner
(1979), 59 Ohio St.2d 14. In In re Johnson (1989), 61 Ohio App.3d 544, the court held that testimony regarding the complaining witness' physical attractions to and sexual desires regarding the defendant were improperly excluded under the rape shield statute, as the "desires" of the alleged victim were not included in the definition of sexual activity. Id. Similarly here, the victim's having a boyfriend and dating him during the relevant time period are not protected by the rape shield law; the questions posed by the prosecution did not implicate the details of the victim's "sexual activity" as defined by the statute. Accordingly, defendant's third assignment of error is overruled.
 {¶ 31} Defendant's fourth assignment of error contends the trial court erred in convicting defendant of two counts of complicity to commit rape where count one of the indictment charges her with rape as a principal offender and is silent as to complicity. The state responds that a defendant may be convicted of complicity even though the defendant is charged in the indictment only as a principal offender.
 {¶ 32} Pursuant to R.C. 2923.03(A), "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." Further, "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F). Ohio cases specifically have held that a defendant may be found guilty of complicity to a crime even though the defendant was indicted and prosecuted as a principal offender. Statev. Tumbleson (1995), 105 Ohio App.3d 693 (holding the trial court properly instructed the jury that the defendant could be found guilty of complicity to aggravated robbery even though he was indicted as a principal rather than under the complicity statute); State v. Ensman
(1991), 77 Ohio App.3d 701 (holding that defendant was on notice that he was either the principal offender or an aider and abettor by virtue of the statute providing that a charge of complicity may be stated in terms of the principal offense); State v. Dotson (1987), 35 Ohio App.3d 135
(holding that where a defendant acts as a middleman in a sale of drugs and is charged under the complicity statute, the defendant is on notice that evidence could be presented that he was either a principal offender or an aider and abettor); State v. Strub (1975), 48 Ohio App.2d 57. If the evidence presented during trial could reasonably be found to have proven the defendant's guilt as an aider and abettor, a jury instruction on complicity is proper. Dotson, supra.
 {¶ 33} Defendant cites State v. Killings (May 29, 1998), Hamilton App. No. C-970167, to support her argument that she was not on notice to defend against a second complicity charge. In Killings, an indictment was returned against the defendant charging him with one count of rape and one count of kidnapping in connection with sexual assaults the defendant and two of his friends committed. Not to establish defendant's guilt, but to provide a factual backdrop to the case, evidence was introduced at trial regarding the details surrounding the involvement of defendant's friends. At the close of the evidence, the trial court included an instruction on complicity; defendant objected on the basis that he did not have notice he would have to defend against a complicity charge.
 {¶ 34} The appellate court acknowledged the complicity statute and the case law allowing a defendant to be charged as a principal yet be convicted for complicity. The court, however, concluded under the circumstances that defendant did not have sufficient notice he would have to defend against a charge of complicity. Killings, supra. The court in particular was concerned that defendant could be held accountable for the separate rapes his friends committed that were not included in the indictment. Id.; cf. State v. Staten (Nov. 7, 1989), Franklin App. No. 88AP-841 (holding the court improperly allowed an amended indictment where it changed the identity of the crime charged by adding an assault separate from and in addition to the assault originally indicted, and further holding that the complicity charge must relate to the same offense for which he or she is charged as a principal); State v. Crooks
(Dec. 12, 1984), Hamilton App. No. C-840184 (holding that allowing an amendment to the indictment charging the defendant as an aider and abettor to a separate rape committed by his companion was improper).
 {¶ 35} Unlike Killings, count one of the three-count indictment charges defendant and her father as principal joint offenders with one count of rape, in violation of R.C. 2907.02. In count three, defendant was charged with one count of complicity to commit rape by aiding and abetting another, her father, in violation of R.C. 2923.03 and 2907.02. Defendant thus not only was on notice to defend against complicity, but the complicity charge was part of the same offense for which defendant was charged as a principal, the single occurrence involving her and her father. Indeed defendant presented a defense that completely denied that she or her father engaged in any wrongdoing, thereby offering a defense to charges as a principal or complicitor.
 {¶ 36} By virtue of the clear and unambiguous language employed in the complicity statute, and in accordance with established case law, defendant could be indicted, prosecuted, and convicted as either a principal offender or as an aider and abettor under count one of the indictment. Tumbleson, supra. Accordingly, defendant was on notice of the charges for which she was to be tried and was able to present a complete defense. R.C. 2907.03(F). Defendant's fourth assignment of error is overruled.
 {¶ 37} In the fifth assignment of error, defendant contends the trial court erred in relying on extrinsic evidence to convict her. Specifically, defendant points to the trial court's remarks at the sentencing hearing when the trial court indicated it attended a session on female sex offenders in order to learn more about the issues involved in the present case. According to the trial court, it learned that female offenders tend to be dishonest. Defendant contends the trial court's acquired knowledge resulted in the determination that defendant was dishonest and therefore guilty.
 {¶ 38} Contrary to defendant's assertion, the trial court specifically stated that it attended the seminar after the court reached its decision as to defendant's guilt. As a result, the seminar could not have influenced the trial court's determination in that regard. Moreover, because defendant does not contest any aspect of the sentence the trial court imposed, we fail to see how the trial court's attending the seminar influenced the trial court to defendant's detriment. Accordingly, defendant's fifth assignment of error is overruled.
 {¶ 39} Having overruled all of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Brown, P.J., French, J., concur.